(Reserved for Clerk of Court)

9. Operation of the Condominium by the Association: Powers and Duties.

9.1 Powers and Duties. The Association shall be the entity responsible for the operation of the Common Elements and the Association Property, but not the Shared Components, as same are part of the Hotel Unit. The powers and duties of the Association shall include those set forth in the By-Laws and Articles of Incorporation of the Association (which By-Laws and Articles are attached hereto as **Exhibits "4" and "5"**, respectively) as amended from time to time. In addition, the Association shall have all the powers and duties set forth in the Act, as well as all powers and duties granted to or imposed upon it by this Declaration, including, without limitation:

(a) The irrevocable right to have access to each Unit from time to time during reasonable hours as may be necessary for pest control purposes and for the maintenance, repair or replacement of any Common Elements or any portion of a Unit, if any, to be maintained by the Association, or at any time and by force, if necessary, to prevent damage to the Common Elements, the Association Property or to a Unit or Units.

(b) The power to make and collect Assessments and other charges by the Association against Unit Owners and to lease, maintain, repair and replace the Common Elements and Association Property.

(c) The power to act as the collection agent on behalf, and at the request, of the Hotel Unit Owner for charges due same from Unit Owners; provided, however, that any sums so collected shall not be deemed Assessments or Common Expenses hereunder.

(d) The duty to maintain accounting records of the Association according to good accounting practices, which shall be open to inspection by Unit Owners or their authorized representatives at reasonable times upon prior request.

(e) The power to borrow money, execute promissory notes and other evidences of indebtedness and to give as security therefor mortgages and security interests in property owned by the Association, if any, provided that such actions are approved by a majority of the entire membership of the Board of Directors and four-fifths of all voting interests of the Units represented at a meeting at which a quorum has been attained, or by such greater percentage of the Board or Unit Owners as may be specified in the By-Laws with respect to certain borrowing.

(f) The power to adopt and amend rules and regulations concerning the details of the operation and use of the Common Elements and Association Property. Notwithstanding anything herein contained to the contrary, no such rule may restrict, limit or otherwise impair the rights of the Hotel Unit Owner and/or the Developer without an affirmative vote representing four fifths (4/5) of the voting interests of all Unit Owners

(g) The power to acquire, convey, lease and encumber real and personal property. Personal property shall be acquired, conveyed, leased or encumbered upon a majority vote of the Board of Directors, unless the cost thereof exceeds $25,000.00 in which event the acquisition shall require an affirmative vote of not less than four-fifths of all voting interests. Real property shall be acquired, conveyed, leased or encumbered upon a majority vote of the Board of Directors alone and an affirmative vote of not less than four-fifths of all voting interests; provided, however, that the acquisition of any Unit as a result of a foreclosure of the lien for Assessments (or by deed in lieu of foreclosure) shall be made upon the majority vote of the Board, regardless of the price for same and the Association, through its Board, has the power to hold, lease, mortgage or convey the acquired

(Reserved for Clerk of Court)

Unit(s) without requiring the consent of Unit Owners. The expenses of ownership (including the expense of making and carrying any mortgage related to such ownership), rental, membership fees, taxes, Assessments, operation, replacements and other expenses and undertakings in connection therewith shall be Common Expenses.

(h)     All of the powers which a corporation not for profit in the State of Florida may exercise pursuant to this Declaration, the Articles of Incorporation, the Bylaws, Chapters 607 and 617, Florida Statutes and the Act, in all cases except as expressly limited or restricted in the Act.

In the event of conflict among the powers and duties of the Association or the terms and provisions of this Declaration, exhibits attached hereto or otherwise, this Declaration shall take precedence over the Articles of Incorporation, By-Laws and applicable rules and regulations; the Articles of Incorporation shall take precedence over the By-Laws and applicable rules and regulations; and the By-Laws shall take precedence over applicable rules and regulations, all as amended from time to time.

9.2    <u>Restraint Upon Assignment of Shares In Assets</u>.  The share of a Unit Owner in the funds and assets of the Association cannot be assigned, hypothecated or transferred in any manner except as an appurtenance to his Unit.

9.3    <u>Approval or Disapproval of Matters</u>.  Whenever the decision of a Unit Owner is required upon any matter, whether or not the subject of an Association meeting, that decision shall be expressed by the same person who would cast the vote for that Unit if at an Association meeting, unless the joinder of all record Owners of the Unit is specifically required by this Declaration or by law.

9.4    <u>Acts of the Association</u>.  Unless the approval or action of Unit Owners, and/or a certain specific percentage of the Board of Directors of the Association, is specifically required in this Declaration, the Articles of Incorporation or By-Laws of the Association, applicable rules and regulations or applicable law, all approvals or actions required or permitted to be given or taken by the Association shall be given or taken by the Board of Directors, without the consent of Unit Owners, and the Board may so approve and act through the proper officers of the Association without a specific resolution. When an approval or action of the Association is permitted to be given or taken hereunder or thereunder, such action or approval may be conditioned in any manner the Association deems appropriate or the Association may refuse to take or give such action or approval without the necessity of establishing the reasonableness of such conditions or refusal.

9.5    <u>Effect on Developer</u>.  If the Developer holds a Unit for sale in the ordinary course of business, none of the following actions may be taken by the Association, subsequent to the transfer of control of the Board to Unit Owners other than the Developer, without the prior written approval of the Developer:

(a)     Assessment of the Developer as a Unit Owner for capital improvements;

(b)     Any action by the Association that would be detrimental to the sales of Units by the Developer; provided, however, that an increase in Assessments for Common Expenses without discrimination against the Developer shall not be deemed to be detrimental to the sales of Units.

10.    <u>Determination of Common Expenses and Fixing of Assessments Therefor</u>.  The Board of Directors shall from time to time, and at least annually, prepare a budget for the Condominium and the Association, determine the amount of Assessments payable by the Unit Owners to meet the Common Expenses of the Condominium and allocate and assess such expenses among the Unit

(Reserved for Clerk of Court)

Owners in accordance with the provisions of this Declaration and the By-Laws. The Board of Directors shall advise all Unit Owners promptly in writing of the amount of the Assessments payable by each of them as determined by the Board of Directors as aforesaid and shall furnish copies of the budget, on which such Assessments are based, to all Unit Owners and (if requested in writing) to their respective mortgagees. The Common Expenses shall include the expenses of and reserves for (if required by, and not waived in accordance with, applicable law) the operation, maintenance, repair and replacement of the Common Elements and Association Property, costs of carrying out the powers and duties of the Association and any other expenses designated as Common Expenses by the Act, this Declaration, the Articles or By-Laws of the Association, applicable rules and regulations or by the Association. Incidental income to the Association, if any, may be used to pay regular or extraordinary Association expenses and liabilities, to fund reserve accounts, or otherwise as the Board shall determine from time to time, and need not be restricted or accumulated. Any Budget adopted shall be subject to change to cover actual expenses at any time. Any such change shall be adopted consistent with the provisions of this Declaration and the By-Laws.

11.    Collection of Assessments.

11.1.    Liability for Assessments. A Unit Owner, regardless of how title is acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure shall be liable for all Assessments coming due while he or she is the Unit Owner. Additionally, a Unit Owner shall be jointly and severally liable with the previous Owner for all unpaid Assessments that came due up to the time of the conveyance, without prejudice to any right the Owner may have to recover from the previous Owner the amounts paid by the grantee Owner. The liability for Assessments may not be avoided by waiver of the use or enjoyment of any Common Elements or by the abandonment of the Unit for which the Assessments are made or otherwise.

11.2    Special and Capital Improvement Assessments. In addition to Assessments levied by the Association to meet the Common Expenses of the Condominium and the Association, the Board of Directors may levy "Special Assessments" and "Capital Improvement Assessments" upon the following terms and conditions:

(a)    "Special Assessments" shall mean and refer to a charge against each Owner and his Unit, representing a portion of the costs incurred by the Association for specific purposes of a nonrecurring nature which are not in the nature of capital improvements.

(b)    "Capital Improvement Assessments" shall mean and refer to a charge against each Owner and his Unit, representing a portion of the costs incurred by the Association for the acquisition, installation, construction or replacement (as distinguished from repairs and maintenance) of any capital improvements located or to be located within the Common Elements or Association Property.

(c)    Special Assessments and Capital Improvement Assessments may be levied by the Board and shall be payable in lump sums or installments, in the discretion of the Board; provided that, if such Special Assessments or Capital Improvement Assessments, in the aggregate in any year, exceed $125,000.00 or cause the total Assessments levied to exceed 115% of Assessments for the preceding calendar year, the Board must obtain approval of a majority of the Units represented at a meeting at which a quorum is attained.

11.3    Default in Payment of Assessments for Common Expenses. Assessments and installments thereof not paid within ten (10) days from the date when they are due shall bear interest at eighteen percent (18%) per annum from the date due until paid and shall be subject to an administrative late fee in an amount not to exceed the greater of $25.00 or

(Reserved for Clerk of Court)

five percent (5%) of each delinquent installment. The Association has a lien on each Condominium Parcel to secure the payment of Assessments. Except as set forth below, the lien is effective from, and shall relate back to, the date of the recording of this Declaration. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien. The lien shall be evidenced by the recording of a claim of lien in the Public Records of the County. To be valid, the claim of lien must state the description of the Condominium Parcel, the name of the record Owner, the name and address of the Association, the amount due and the due dates, and the claim of lien must be executed and acknowledged by an officer or authorized officer of the Association. The claim of lien shall not be released until all sums secured by it (or such other amount as to which the Association shall agree by way of settlement) have been fully paid or until it is barred by law. No such lien shall be effective longer than one (1) year after the claim of lien has been recorded unless, within that one (1) year period, an action to enforce the lien is commenced. The one (1) year period shall automatically be extended for any length of time during which the Association is prevented from filing a foreclosure action by an automatic stay resulting from a bankruptcy petition filed by the Owner or any other person claiming an interest in the Unit. The claim of lien shall secure (whether or not stated therein) all unpaid Assessments, which are due and which may accrue subsequent to the recording of the claim of lien and prior to the entry of a certificate of title, as well as interest and all reasonable costs and attorneys' fees incurred by the Association incident to the collection process. Upon payment in full, the person making the payment is entitled to a satisfaction of the lien in recordable form. The Association may bring an action in its name to foreclose a lien for unpaid Assessments in the manner a mortgage of real property is foreclosed and may also bring an action at law to recover a money judgment for the unpaid Assessments without waiving any claim of lien. The Association is entitled to recover its reasonable attorneys' fees incurred either in a lien foreclosure action or an action to recover a money judgment for unpaid Assessments.

As an additional right and remedy of the Association, upon default in the payment of Assessments as aforesaid and after thirty (30) days' prior written notice to the applicable Unit Owner and the recording of a claim of lien, the Association may declare the Assessment installments for the remainder of the budget year to be accelerated and immediately due and payable. In the event that the amount of such installments changes during the remainder of the budget year, the Unit Owner or the Association, as appropriate, shall be obligated to pay or reimburse to the other the amount of increase or decrease within ten (10) days of same taking effect.

11.4   <u>Notice of Intention to Foreclose Lien</u>. No foreclosure judgment may be entered until at least thirty (30) days after the Association gives written notice to the Unit Owner of its intention to foreclose its lien to collect the unpaid Assessments. If this notice is not given at least thirty (30) days before the foreclosure action is filed, and if the unpaid Assessments, including those coming due after the claim of lien is recorded, are paid before the entry of a final judgment of foreclosure, the Association shall not recover attorney's fees or costs. The notice must be given by delivery of a copy of it to the Unit Owner or by certified or registered mail, return receipt requested, addressed to the Unit Owner at the last known address, and upon such mailing, the notice shall be deemed to have been given. If after diligent search and inquiry the Association cannot find the Unit Owner or a mailing address at which the Unit Owner will receive the notice, the court may proceed with the foreclosure action and may award attorney's fees and costs as permitted by law. The notice requirements of this subsection are satisfied if the Unit Owner records a Notice of Contest of Lien as provided in the Act.

11.5   <u>Appointment of Receiver to Collect Rental</u>. If the Unit Owner remains in possession of the Unit after a foreclosure judgment has been entered, the court in its discretion may require the Unit Owner to pay a reasonable rental for the Unit. If the Unit is rented or leased during the pendency of the foreclosure action, the Association is entitled to the

(Reserved for Clerk of Court)

appointment of a receiver to collect the rent. The expenses of such receiver shall be paid by the party which does not prevail in the foreclosure action.

11.6    First Mortgagee.  The liability of a First Mortgagee, or its successor or assignees, who acquire title to a Unit by foreclosure or by deed in lieu of foreclosure for the unpaid Assessments (or installments thereof) that became due prior to the First Mortgagee's acquisition of title is limited to the lesser of:

    (a)    The Unit's unpaid Common Expenses and regular periodic Assessments which accrued or came due during the six (6) months immediately preceding the acquisition of title and for which payment in full has not been received by the Association; or

    (b)    One percent (1%) of the original mortgage debt.

As to a Unit acquired by foreclosure, the limitations set forth in clauses (a) and (b) above shall not apply unless the First Mortgagee joined the Association as a defendant in the foreclosure action. Joinder of the Association, however, is not required if, on the date the complaint is filed, the Association was dissolved or did not maintain an office or agent for service of process at a location which was known to or reasonably discoverable by the mortgagee.

A First Mortgagee acquiring title to a Unit as a result of foreclosure or deed in lieu thereof may not, during the period of its ownership of such Unit, whether or not such Unit is unoccupied, be excused from the payment of some or all of the Common Expenses coming due during the period of such ownership.

11.7    Certificate of Unpaid Assessments.  Within fifteen (15) days after written request by a Unit Owner or mortgagee of a Unit, the Association shall provide a certificate stating all Assessments and other moneys owed to the Association by the Unit Owner with respect to his Unit. Any person other than the Unit Owner who relies upon such certificate shall be protected thereby. The Association or its authorized agent may charge a reasonable fee for the preparation of such certificate.

11.8    Installments.  Regular Assessments shall be collected monthly or quarterly, in advance, at the option of the Association. Initially, Assessments will be collected monthly.

11.9    Application of Payments.  Any payments received by the Association from a delinquent Unit Owner shall be applied first to any interest accrued on the delinquent installment(s) as aforesaid, then to any administrative late fees, then to any costs and reasonable attorneys' fees incurred in collection and then to the delinquent and any accelerated Assessments. The foregoing shall be applicable notwithstanding any restrictive endorsement, designation or instruction placed on or accompanying a payment.

12.    Obligation for Expenses Relating to the Hotel Unit.  Nothing contained in this Section 12 shall conflict with the powers and duties of the Association or the rights of the Unit Owners as provided in the Act.

12.1    Maintenance.  As provided in Sections 3.4(e) and 7.3 above, the Hotel Unit Owner has granted easements with respect to certain portions of the Hotel Unit and agreed to repair, replace, improve, maintain, manage, operate, and insure the Hotel Unit, all to be done as determined and ordered by the Hotel Unit Owner, or otherwise as provided in Section 7.3. In consideration of the foregoing, each Residential Unit Owner and each Commercial Unit Owner, by acceptance of a deed or other conveyance of the applicable Unit, and whether or not expressly stated, shall be deemed to agree that the costs incurred by the Hotel Unit Owner in (or reasonably allocated to) the repair, replacement, improvement, maintenance,

(Reserved for Clerk of Court)

management (including a commercially reasonable management fee), operation, ad valorem tax obligations and insurance of the Shared Components (including reasonable reserves if established by the Hotel Unit Owner and any assessments payable by the Hotel Unit Owner to the Association, collectively, the "Hotel Shared Costs") shall be paid for in part through charges (either general or special) imposed against the Residential Units and Commercial Units in accordance with the terms hereof. No Owner may waive or otherwise escape liability for charges for the Hotel Shared Costs by non-use (whether voluntary or involuntary) of the Hotel Unit or abandonment of the right to use same. Notwithstanding anything herein contained to the contrary, the Hotel Unit Owner shall be excused and relieved from any and all maintenance, repair and/or replacement obligations with respect to the Hotel Unit to the extent that the funds necessary to perform same, to the extent the obligation of the Residential Unit Owners and/or the Commercial Unit Owners, are not available through the charges imposed and actually collected. The Hotel Unit Owner shall have no obligation to fund and/or advance any deficit or shortfall in funds which were the obligation of the Residential Unit Owners and/or the Commercial Unit Owners in order to properly perform the maintenance, repair and/or replacement obligations described herein.

12.2    Easement.  An easement is hereby reserved and created in favor of the Hotel Unit Owner, and its designees over the Condominium Property for the purpose of entering onto the Condominium Property for the performance of the maintenance, repair and replacement obligations herein described. Without limiting the generality of the foregoing, each Owner shall be deemed to understand and agree that the Condominium Property is intended to contain a trash chute. Each Owner shall be obligated to follow such trash removal procedures as may be established from time to time by the Hotel Unit Owner. Under no circumstances may trash be placed in hallways and/or any other locations visible to Unit Owners and/or guests of the Hotel. To the extent that the Hotel Unit Owner determines (without any obligation to do so) to remove trash directly from each Unit, then: (i) an easement is hereby reserved to allow the Hotel Unit Owner (or its employees, agents or contractors) access to each Unit for such purpose, and (ii) all costs in connection with trash removal shall be deemed part of the Hotel Shared Costs.

12.3    Charges to Unit Owners; Lien.  Developer, for all Units now or hereafter located within the Condominium Property, hereby covenants and agrees, and each Owner of any Residential Unit and/or Commercial Unit, by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in such deed or other conveyance, shall be deemed to covenant and agree, to pay to the Hotel Unit Owner annual charges for the operation and insurance of, and for payment of one hundred percent (100%) of the Hotel Shared Costs (the "Non-Hotel Units Allocated Share"), the establishment of reasonable reserves for the replacement of the Shared Components and the furnishings and finishings thereof, capital improvement charges, special charges and all other charges hereinafter referred to or lawfully imposed by the Hotel Unit Owner in connection with the repair, replacement, improvement, maintenance, management, operation, and insurance of the Shared Components, all such charges to be fixed, established and collected from time to time as herein provided. The annual charge, capital improvement charge and special charge, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge on the Residential Units and Commercial Units and shall be a continuing lien upon the Residential Units and Commercial Units against which each such charge is made and upon all improvements thereon, from time to time existing. Each such charge, together with such interest thereon and costs of collection thereof as hereinafter provided, shall also be the obligation of the person and/or entity who/which is the Owner of such Residential Units and/or Commercial Units at the time when the charge fell due and all subsequent Owners of that Unit until paid, except as provided in Section 12.5 below. Reference herein to charges shall be understood to include reference to any and all of said charges whether or not specifically mentioned. Each Residential and Commercial Unit shall be charged a "proportionate share" of the Hotel Shared Costs. The proportionate share for each Residential and Commercial Unit of the Hotel Shared Costs is set forth on

(Reserved for Clerk of Court)

Exhibit "6" attached hereto.  In addition to the regular and capital improvement charges which are or may be levied hereunder, the Hotel Unit Owner shall have the right to collect reasonable reserves for the replacement of the Shared Components and the furnishings and finishings thereof and to levy special charges against an Owner(s) to the exclusion of other Owners for the repair or replacement of damage to any portion of the Hotel Unit (including, without limitation, improvements, furnishings and finishings therein) caused by the misuse, negligence or other action or inaction of an Owner or his guests, tenants or invitees.  Any such special charge shall be subject to all of the applicable provisions of this Section including, without limitation, lien filing and foreclosure procedures and late charges and interest.  Any special charge levied hereunder shall be due within the time specified by the Hotel Unit Owner in the action imposing such charge.  The annual regular charges provided for in this Section shall commence on the first day of the month next following the recordation of this Declaration and shall be applicable through December 31 of such year.  Each subsequent annual charge shall be imposed for the year beginning January 1 and ending December 31.  The annual charges shall be payable in advance in monthly installments, or in annual, semi- or quarter-annual installments if so determined by the Hotel Unit Owner (absent which determination they shall be payable monthly).  The charge amount (and applicable installments) may be changed at any time by the Hotel Unit Owner from that originally stipulated or from any other charge that is in the future adopted by the Hotel Unit Owner.  The original charge for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, at any appropriate time during the year), but the amount of any revised charge to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year.  The Hotel Unit Owner shall fix the date of commencement and the amount of the charge against the Residential Units and/or Commercial Units, as applicable, for each charge period, to the extent practicable, at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the Residential Units and Commercial Units and charges applicable thereto which shall be kept in the office of the Hotel Unit Owner and shall be open to inspection by any Owner.  Written notice of the charge shall thereupon be sent to every Unit Owner subject thereto twenty (20) days prior to payment of the first installment thereof, except as to special charges.  In the event no such notice of the charges for a new charge period is given, the amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein.

12.4    Effect of Non-Payment of Charge; the Personal Obligation; the Lien; Remedies of the Hotel Unit Owner.  If the charges (or installments) provided for herein are not paid on the date(s) when due (being the date(s) specified herein or pursuant hereto), then such charges (or installments) shall become delinquent and shall, together with late charges, interest and the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the Unit and all improvements thereon which shall bind such Unit in the hands of the then Owner, and such Owner's heirs, personal representatives, successors and assigns.  Except as provided in Section 12.5 to the contrary, the personal obligation of an Owner to pay such charge shall pass to such Owner's successors in title and recourse may be had against either or both.  If any installment of a charge is not paid within fifteen (15) days after the due date, at the option of the Hotel Unit Owner, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest at eighteen percent (18%) per annum or as otherwise provided herein but shall not be subject to additional late charges; provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid) and the Hotel Unit Owner may bring an action at law against the Owner(s) obligated to pay the same, may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the Unit on which the charges and late charges are unpaid and all improvements thereon, may foreclose the lien against the applicable Unit and all improvements thereon on which the charges and late

Declaration
- 23 -

(Reserved for Clerk of Court)

charges are unpaid, or may pursue one or more of such remedies at the same time or successively, and attorneys' fees and costs actually incurred in preparing and filing the claim of lien and the complaint, if any, and prosecuting same, in such action shall be added to the amount of such charges, late charges and interest secured by the lien, and in the event a judgment is obtained, such judgment shall include all such sums as above provided and attorneys' fees actually incurred together with the costs of the action, through all applicable appellate levels. Failure of the Hotel Unit Owner (or any collecting entity) to send or deliver bills or notices of charges shall not relieve Owners from their obligations hereunder. The Hotel Unit Owner shall have such other remedies for collection and enforcement of charges as may be permitted by applicable law. All remedies are intended to be, and shall be, cumulative.

12.5    Subordination of the Hotel Unit Owner's Lien. The lien of the charges provided for in this Article shall be subordinate to real property tax liens and the lien of any first mortgage; provided, however, that any such mortgage lender when in possession, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any such mortgage lender acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under such purchaser or mortgage lender, shall hold title subject to the liability and lien of any charge coming due after such foreclosure (or conveyance in lieu of foreclosure). Any unpaid charge which cannot be collected as a lien against any Unit by reason of the provisions of this Section shall be deemed to be a charge divided equally among, payable by and a lien against all Units, including the Units as to which the foreclosure (or conveyance in lieu of foreclosure) took place.

12.6    Curative Right. In the event (and only in the event) that the Hotel Unit Owner fails to maintain the Shared Components as required under this Declaration for any reason other than failure to receive sufficient funds therefor from the Unit Owners, the Association shall have the right to perform such duties; provided, however, that same may only occur after sixty (60) days' prior written notice to the Hotel Unit Owner and provided that the Hotel Unit Owner has not effected curative action within said sixty (60) day period (or if the curative action cannot reasonably be completed within said sixty (60) day period, provided only that the Hotel Unit Owner has not commenced curative actions within said sixty (60) day period and thereafter diligently pursued same to completion). To the extent that the Association must undertake maintenance responsibilities as a result of the Hotel Unit Owners' failure to perform same, then in such event, but only for such remedial actions as may be necessary, the Association shall be deemed vested with the Charge rights of the Hotel Unit Owner hereunder for the limited purpose of obtaining reimbursement from the Hotel Unit Owner for the costs of performing such remedial work.

12.7    Financial Records. The Hotel Unit Owner shall maintain financial books and records showing its actual receipts and expenditures with respect to the maintenance, operation, repair, replacement, alteration and insurance of the Shared Components, including the then current budget and any then proposed budget (the "Shared Components Records"). The Shared Components Records need not be audited or reviewed by a Certified Public Accountant. The Shared Components Records shall at all times, during reasonable business hours, be subject to the inspection of any Member of the Association.

12.8    Limitation Upon Liability of Hotel Unit Owner. Notwithstanding the duty of the Hotel Unit Owner to maintain and repair the Shared Components, the Hotel Unit Owner shall not be liable to any other Unit Owners (nor their guests, tenants or invitees) for injury or damage, other than for the cost of maintenance and repair, caused by any latent condition of the Shared Components. Further, the Hotel Unit Owner shall not be liable for any such injury or damage caused by defects in design or workmanship or any other reason connected with any additions, alterations or improvements or other activities done by or on behalf of any Unit Owners regardless of whether or not same shall have been approved by the Hotel Unit Owner pursuant to Section 8.1 hereof. The Hotel Unit also shall not be liable to any

(Reserved for Clerk of Court)

Unit Owner or lessee or to any other person or entity for any property damage, personal injury, death or other liability on the grounds that the Hotel Unit Owner did not obtain or maintain insurance (or carried insurance with any particular deductible amount) for any particular matter where: (i) such insurance is not required hereby; or (ii) the Hotel Unit Owner could not obtain such insurance at reasonable costs or upon reasonable terms.

12.9    Hotel Unit Owners Consent; Conflict.  The provisions of this Section 12 shall not be amended, modified or in any manner impaired and/or diminished, directly or indirectly, without the prior written consent of 4/5th of the voting interests of all Unit Owners.  In the event of any conflict between the provisions of this Section 12, and the provisions of any other Section of this Declaration, the provisions of this Section 12 shall prevail and govern.

13.    Insurance.  Insurance obtained by the Hotel Unit Owner pursuant to the requirements of this Section 13 shall be governed by the following provisions:

13.1    Purchase, Custody and Payment.

(a)    Purchase.  All insurance policies required to be obtained by the Hotel Unit Owner hereunder shall be issued by an insurance company authorized to do business in Florida or by surplus lines carriers offering policies for properties in Florida.

(b)    Named Insured.  The named insured shall be the Hotel Unit Owner, individually, or such designee as may be designated by the Hotel Unit Owner, and as agent for the Association and the Owners of Units covered by the policy, without naming them, and as agent for the holders of any mortgage on a Unit (or any leasehold interest therein), without naming them.  The Association, Unit Owners and the holders of any mortgage on a Unit (or any leasehold interest therein) shall be deemed additional insureds.

(c)    Custody of Policies and Payment of Proceeds.  All policies shall provide that payments for losses made by the insurer shall be paid to the Hotel Unit Owner and the holders of any mortgage on the Hotel Unit, as their interests may appear.

(d)    Copies to Mortgagees.  One copy of each insurance policy, or a certificate evidencing such policy, and all endorsements thereto, shall be furnished by the Hotel Unit Owner upon request to the holders of any mortgage on a Unit.  Copies or certificates shall be furnished not less than ten (10) days prior to the beginning of the term of the policy, or not less than ten (10) days prior to the expiration of each preceding policy that is being renewed or replaced, as appropriate.

(e)    Personal Property and Liability.  Except as specifically provided herein, the Hotel Unit Owner shall not be responsible to other Unit Owners to obtain insurance coverage upon the property lying within the boundaries of their Unit, including, but not limited to, the Improvements, Owner's personal property, nor insurance for the Owners' personal liability and living expenses, nor for any other risks not otherwise insured in accordance herewith.

13.2    Coverage.  The Hotel Unit Owner shall maintain insurance covering the following:

(a)    Casualty.  The Shared Components, together with all fixtures, building service equipment, personal property and supplies constituting the Shared Components (collectively the "Insured Property"), shall be insured in such commercially reasonable amounts as may be determined from time to time by the Hotel Unit Owner.  Notwithstanding the foregoing, the Insured Property shall not include, and shall specifically exclude, the Residential Units and the Commercial Units, the portions of the Hotel Unit which are not part of the Shared Components, and all

(Reserved for Clerk of Court)

furniture, furnishings, Unit floor coverings, wall coverings and ceiling coverings, other personal property owned, supplied or installed by Residential Unit Owners or the Commercial Unit Owners (or tenants of same), and all electrical fixtures, electronics, appliances, air conditioner and/or heating equipment, water heaters, water filters, built-in cabinets and countertops, and window treatments, including curtains, drapes, blinds, hardware and similar window treatment components, or replacements or any of the foregoing which are located within the boundaries of a Unit and serve only one Unit and all air conditioning compressors that service only an individual Unit, if any and to the extent not part of the Shared Components. Such policies may contain reasonable deductible provisions as determined by the Hotel Unit Owner.  Such coverage shall afford protection against loss or damage by fire and other hazards covered by a standard extended coverage endorsement, and such other risks as from time to time are customarily covered with respect to buildings and improvements similar to the Insured Property in construction, location and use, including, but not limited to, vandalism and malicious mischief.

(b)     Liability.  Comprehensive general public liability and automobile liability insurance covering loss or damage resulting from accidents or occurrences on or about or in connection with the Insured Property or adjoining driveways and walkways, or any work, matters or things related to the Insured Property, with such coverage as shall be required by the Hotel Unit Owner, and with a cross liability endorsement to cover liabilities of the Unit Owners as a group to any Unit Owner, and vice versa.

(c)     Worker's Compensation and other mandatory insurance, when applicable, to the extent applicable to the maintenance, operation, repair or replacement of the Shared Components.

(d)     Flood Insurance covering the Insured Property, if so determined by the Hotel Unit Owner.

(e)     Such Other Insurance as the Hotel Unit Owner shall determine from time to time to be desirable in connection with the Shared Components.

When appropriate and obtainable, each of the foregoing policies shall waive the insurer's right to: (i) as to property insurance policies, subrogation against the Association and against the Unit Owners individually and as a group, (ii) to pay only a fraction of any loss in the event of coinsurance or if other insurance carriers have issued coverage upon the same risk, and (iii) avoid liability for a loss that is caused by an act of the Hotel Unit Owner (or any of its employees, contractors and/or agents), one or more Unit Owners or as a result of contractual undertakings.  Additionally, and each policy shall provide that the insurance provided shall not be prejudiced by any act or omissions of individual Unit Owners that are not under the control of the Hotel Unit Owner.

13.3    Additional Provisions.  All policies of insurance shall provide that such policies may not be canceled or substantially modified without at least thirty (30) days' prior written notice to all of the named insureds, including all mortgagees.  Prior to obtaining any policy of casualty insurance or any renewal thereof, the Hotel Unit Owner may obtain an appraisal from a fire insurance company, or other competent appraiser, of the full insurable replacement value of the Insured Property (exclusive of foundations), without deduction for depreciation, for the purpose of determining the amount of insurance to be effected pursuant to this Section.

13.4    Premiums.  Premiums upon insurance policies purchased by the Hotel Unit Owner pursuant to this Section 13 shall be among the costs assessed against the Unit Owners in accordance with the provisions of Section 12.  Premiums may be financed in such manner as the Hotel Unit Owner deems appropriate.

(Reserved for Clerk of Court)

13.5 <u>Share of Proceeds</u>. All insurance policies obtained by or on behalf of the Hotel Unit Owner pursuant to this Section 13 shall be for the benefit of the Hotel Unit Owner, the Association, the Unit Owners and the holders of any mortgage on a Unit (or any leasehold interest therein), as their respective interests may appear. The duty of the Hotel Unit Owner shall be to receive such proceeds as are paid and to hold the same in trust for the purposes elsewhere stated herein, and for the benefit of the Unit Owners and the holders of any mortgage on the subject Unit(s) (or any leasehold interest therein) in accordance with the Allocated Interest attributable thereto.

13.6 <u>Distribution of Proceeds</u>. Proceeds of insurance policies required to be maintained by the Hotel Unit Owner pursuant to this Section 13 shall be distributed to or for the benefit of the beneficial owners thereof in the following manner:

    (a)    <u>Reconstruction or Repair</u>. If the damaged property for which the proceeds are paid is to be repaired or reconstructed, the proceeds shall be paid to defray the cost thereof as elsewhere provided herein. Any proceeds remaining after defraying such costs shall be distributed to the Owners, remittances to Unit Owners and their mortgagees being payable jointly to them.

13.7 <u>Hotel Unit Owner as Agent</u>. The Hotel Unit Owner is hereby irrevocably appointed as agent and attorney-in-fact for the Association and each Unit Owner and for each owner of a mortgage or other lien upon a Unit and for each owner of any other interest in the Condominium Property to adjust all claims arising under insurance policies purchased by the Hotel Unit Owner and to execute and deliver releases upon the payment of claims.

13.8 <u>Unit Owners' Personal Coverage</u>. The insurance required to be purchased by the Hotel Unit Owner pursuant to this Section 13 shall not cover claims against an Owner due to accidents occurring within his Unit, nor casualty or theft loss to the contents of an Owner's Unit. It shall be the obligation of the individual Unit Owner, if such Owner so desires, to purchase and pay for insurance as to all such and other risks not covered by insurance required to be carried by the Hotel Unit Owner hereunder.

13.9 <u>Effect on Association</u>. The Association shall only maintain such insurance as is expressly required to be maintained by the Association pursuant to the Act, it being the express intent of the Developer, as the Owner of each and every of the Units upon the recordation hereof, for itself and its successors and assigns, that the Association not be required to maintain insurance hereunder. To the extent that the Association is required to maintain insurance pursuant to the express requirements of the Act, then (a) as to any insurance required to be maintained by the Association, the Hotel Unit Owner shall be relieved and released of its obligation hereunder to maintain same, and (b) all of the provisions hereof regarding said insurance, any claims thereunder and the distribution and application of proceeds thereunder shall be governed in accordance with the terms of this Declaration governing the insurance required to be maintained by the Hotel Unit Owner as if the references herein to the Hotel Unit Owner were references to the Association.

13.10 <u>Benefit of Mortgagees</u>. Certain provisions in this Section 13 are for the benefit of mortgagees of Units and may be enforced by such mortgagees.

(Reserved for Clerk of Court)

14.    Reconstruction or Repair After Fire or Other Casualty.

14.1    Determination to Reconstruct or Repair.  Subject to the immediately following paragraph, in the event of damage to or destruction of the Insured Property as a result of fire or other casualty, the Hotel Unit Owner shall determine whether or not to repair and/or restore the Insured Property, and if a determination is made to effect restoration, the Hotel Unit Owner shall disburse the proceeds of all insurance policies required to be maintained by it under Section 13 to the contractors engaged in such repair and restoration in appropriate progress payments.

In the event the Hotel Unit Owner determines not to effect restoration to the Shared Components, the net proceeds of insurance resulting from such damage or destruction shall be divided among all the Unit Owners in proportion to their Allocated Interests; provided, however, that no payment shall be made to a Unit Owner until there has first been paid off out of his share of such fund all mortgages and liens on his Unit in the order of priority of such mortgages and liens.

14.2    Plans and Specifications.  Any reconstruction or repair must be made substantially in accordance with the plans and specifications for the original Improvements and then applicable building and other codes; or if not, then in accordance with the plans and specifications approved by the Hotel Unit Owner, provided, however, that if any reconstruction is undertaken, same shall be undertaken in such a manner to restore the Units to substantially the same condition they were in prior to the occurrence of the casualty.

14.3    Assessments.  If the proceeds of the insurance are not sufficient to defray the estimated costs of reconstruction and repair to be effected by the Hotel Unit Owner, or if at any time during reconstruction and repair, or upon completion of reconstruction and repair, the funds for the payment of the costs of reconstruction and repair are insufficient, Assessments shall be made against the Unit Owners by the Hotel Unit Owner (which shall be deemed to be assessments made in accordance with, and secured by the lien rights contained in, Section 12 above) in sufficient amounts to provide funds for the payment of such costs.  Such Assessments on account of damage to the Insured Property shall be in proportion to all of the Owners' respective Allocated Interests.

14.4    Benefit of Mortgagees.  Certain provisions in this Section 14 are for the benefit of mortgagees of Units and may be enforced by any of them.

15.    Condemnation.

15.1    Deposit of Awards.  The taking of portions of the Shared Components by the exercise of the power of eminent domain shall be deemed to be a casualty, and the awards for that taking shall be deemed to be proceeds from insurance on account of the casualty and shall be deposited with the Hotel Unit Owner.  Even though the awards may be payable to Unit Owners, the Unit Owners shall deposit the awards with the Hotel Unit Owner; and in the event of failure to do so, in the discretion of the Hotel Unit Owner, a charge shall be made against a defaulting Unit Owner in the amount of his award, or the amount of that award shall be set off against the sums hereafter made payable to that Owner.

15.2    Determination Whether to Continue Condominium.  Whether the Condominium will be continued after condemnation will be determined in the manner provided for determining whether damaged property will be reconstructed and repaired after casualty.  For this purpose, the taking by eminent domain also shall be deemed to be a casualty.

15.3    Disbursement of Funds.  If the Condominium is terminated after condemnation, the proceeds of the awards and special Assessments will be deemed to be insurance

(Reserved for Clerk of Court)

proceeds and shall be owned and distributed in the manner provided with respect to the ownership and distribution of insurance proceeds if the Condominium is terminated after a casualty.

15.4    Taking of Shared Components. Awards for the taking of Shared Components shall be used to render the remaining portion of the Shared Components usable in the manner approved by the Hotel Unit Owner; provided, that if the cost of such work shall exceed the balance of the funds from the awards for the taking, the work shall be approved in the manner elsewhere required for capital improvements to the Shared Components. The balance of the awards for the taking of Shared Components, if any, shall be distributed to the Unit Owners in accordance with their Allocated Interests. Notwithstanding the foregoing, in the event that the costs of restoration resulting from any taking exceed $1,000,000.00, then the Hotel Unit Owner shall have the sole right to determine whether or not to repair and/or restore in the same manner as is provided in Section 14 above with respect to a casualty loss. If there is a mortgage on a Unit, the distribution shall be paid jointly to the Owner and the said mortgagees.

16.    Occupancy and Use Restrictions. In order to provide for congenial occupancy of the Condominium and Association Property and for the protection of the values of the Units, the use of the Condominium Property shall be restricted to and shall be in accordance with the following provisions:

16.1    Occupancy. Each shall be used only in accordance with all applicable county and state codes, ordinances and regulations (as same may be modified from time to time) and the approvals and permits issued for the Improvements, and for no other purpose. In that regard, each Owner, by acceptance of a deed or otherwise acquiring title to a Unit, understands and agrees that the land use designation for the Condominium Property is Central Beach Regional Activity Center and the zoning district designation is "ABA". As a result of such designations and pursuant to applicable City, County and State laws, codes, ordinances and regulations (as all of same may be modified from time to time) there is no assurance that a Unit Owner (or any member of the Unit Owner's family, nor any person legally dependent upon the Unit Owner) may establish a permanent residence at the Unit or any real property contiguous thereto, or rely on the ability to use the Unit address for the purpose of student or voter registration, obtaining a driver's license or registration of a motor vehicle. As such, under certain circumstances the Unit may not qualify as the homestead of a Unit Owner (or any member of the Unit Owner's family, nor any person legally dependent upon the Unit Owner), and as a result, no Unit Owner shall rely on the ability to file a claim for homestead exemption from ad valorem taxes with respect to such Unit, or rely on the ability to use the Unit address for the purpose of student or voter registration, obtaining a driver's license or registration of a motor vehicle. Each Owner, by acceptance of title to a Unit, shall be deemed to have understood and agreed that, pursuant to applicable City, County and State laws, codes, ordinances and regulations (as same may be modified from time to time), certain restrictions may exist on continuous occupancy of the Units. Accordingly, each Unit shall be bound by all such restrictions. Each Owner understands and agrees that it shall be bound by the limitations of the land use and zoning designations and all City, County and State laws, codes, ordinances and regulations (as all of same may be modified from time to time) and hereby releases the Developer (its members, and its and their partners, shareholders and employees) from any and all liabilities and/or damages resulting from same. Each Owner recognizes and agrees that the Commercial Units may be used for any lawful purpose, and may be used by the Owner(s) thereof and its/their guests, tenants and invitees. Each Owner further recognizes and agrees that the Hotel Unit may be used for any lawful purpose, and may be used by the Owner(s) thereof and its/their guests, tenants and invitees. The provisions of this subsection 16.1 shall not be applicable to Units used by the Developer for model apartments, sales or resales offices or management or administrative services.

(Reserved for Clerk of Court)

The rights of Unit Owners to use the Shared Components shall be limited to the extent granted in, and subject to the restrictions of, Section 3.4(e), and the obligation for payment of the charges as set forth in Section 12 (provided, however, that in no event shall an Owner be denied access to and from the Owner's Unit). It is contemplated (but without creating an obligation whatsoever) that in addition to use as a typical hallway for pedestrian passage, the Hotel Unit may be utilized by the Hotel Unit Owner in such a manner as to provide, or cause to be provided, certain hotel-related services to Residential Unit Owners, all of which shall be subject to rules, regulations and/or conditions as may be established by the Hotel Unit Owner from time to time in its sole and absolute discretion, including, without limitation, the right to require any person requesting such services to sign such agreements and pay such fees as may be required from time to time by the Hotel Unit Owner. Each Unit Owner, by acceptance of a deed or other conveyance of a Unit, recognizes and agrees that the Hotel Unit Owner is not required to provide any hotel related services, but if it determines to do so, in its sole discretion, it may condition the provisions of such services in any manner it so desires, including, but not limited to payment for these services.

The provisions of this subsection 16.1 shall not be amended without the affirmative vote of not less than four-fifths (4/5ths) of the total voting interests of all Unit Owners.

16.2    Pet Restrictions.  Domesticated dogs (but not cats) may be maintained in a Residential Unit provided such dogs (a) are permitted to be so kept by applicable laws and regulations, (b) are not kept, bred or maintained for any commercial purpose, and (c) do not become a nuisance or annoyance to neighbors; provided that neither the Hotel Unit Owner, the Board, the Developer nor the Association shall be liable for any personal injury, death or property damage resulting from a violation of the foregoing and any occupant of a Unit committing such a violation shall fully indemnify and hold harmless the Hotel Unit Owner, the Board, the Developer, each Unit Owner and the Association in such regard.  No cats, reptiles or wildlife shall be kept in or on the Condominium Property (including Units).  Unit Owners must pick up all solid wastes of their pets and dispose of such wastes appropriately.  All dogs must be kept on a leash of a length that affords reasonable control over the dog at all times when outside the Unit or enclosed patio.  No pets may be kept on patio areas or on balconies of any Units when the Owner is not in the Unit.  Pets may not be taken in any elevators in the Condominium other than in the service elevator(s).  This Section 16.2 shall not prohibit the keeping of fish or a caged household-type bird(s) in a Residential Unit, provided that a bird(s) is not kept on Limited Common Elements or becomes a nuisance or annoyance to neighbors.

16.3    Third Party Service Providers.  The Hotel Unit Owner shall have the right, in its sole and absolute discretion, to establish reasonable regulations from time to time with respect to the provision of hotel services by third party providers, including, but not limited to, solicitation and/or provision of personal services (i.e., massage, personal training, dry cleaning, etc.) and/or food and beverage service, to the Condominium, the Unit Owners and their guests, tenants and invitees.  No amendment to this Declaration or rule of the Association shall be adopted to impair or abridge the rights herein granted without an affirmative vote of four fifths (4/5) of the voting interests of the Unit Owners.

16.4    Alterations.  Without limiting the generality of Section 8.1 hereof, but subject to Section 9 hereof, no Residential or Commercial Unit Owner shall cause or allow improvements or changes to any Residential Unit, Commercial Unit, Shared Components, Common Elements or Association Property, including, but not limited to, painting or other decorating of any nature, installing any electrical wiring, television antenna, machinery, or air-conditioning units, which in any manner change the appearance of any portion of the Building or the exterior of said Unit, without obtaining the prior written consent of the Association (as to all portions of the Condominium Property other than the Hotel Unit and the Shared Components) or the Hotel Unit Owner (as to any alterations affecting the Hotel

(Reserved for Clerk of Court)

Unit or the Shared Components). Further, any Unit which is built out for handicap accessibility and/or compliance with applicable disability requirement of City, State or Federal law, must be maintained in that condition and can not be altered. Additionally, curtains or drapes (or linings thereof) which face the exterior windows or glass doors of Units shall be consistent with the standard adopted from time to time for the Building. Notwithstanding the provisions of Section 8.1 above, any Unit Owner may display one portable, removable United States flag in a respectful way, and, on Armed Forces Day, Memorial Day, Flag Day, Independence Day and Veterans Day, may display in a respectful way portable, removable official flags, not larger than $4^1/_2$ feet by 6 feet, that represent the United States Army, Navy, Air Force, Marine Corps or Coast Guard.

The Hotel Unit Owner shall have the right to establish non-discriminatory restrictions on any and all persons performing work requiring access through the Shared Components or affecting the Shared Components, including, without limitation, by (a) restricting the hours during which work may be performed and restricting access of contractors to certain areas, (b) requiring that all persons performing any work have all necessary licenses and permits to perform the work, (c) requiring that all persons performing any work have adequate insurance coverage and that the Association be a named additional insured on such policy(ies), and (d) requiring a security deposit or other collateral to protect against damage that may be caused during such work.

16.5    Nuisances.  No nuisances shall be allowed on the Condominium or Association Property, nor shall any use or practice be allowed which is a source of annoyance to occupants of Units or which interferes with the peaceful possession or proper use of the Condominium and/or Association Property by its residents, occupants or members.  No activity specifically permitted by this Declaration, including, without limitation, activities or businesses conducted from the Hotel Unit, shall be deemed a nuisance.

**Each Unit Owner, by acceptance of a deed or other conveyance of a Unit shall be deemed to understand and agree that inasmuch as hotel operations are intended to be conducted from the Condominium Property, including, without limitation, upon the pool deck and on other portions of the Shared Components, noise, inconvenience and/or other disruptions will occur, including, without limitation, noise and disruptions occurring at the hotel entry and private events requiring certain portions of the Shared Components to be closed off and/or restricted.  By acquiring a Unit, each Unit Owner, for such Unit Owner and its guests, tenants and invitees, and its and their successors and/or assigns, agrees not to object to the operations of the hotel, and/or any operations from the Hotel Unit and/or any Commercial Unit, which may include, noise, disruption, inconvenience and the playing of music, and hereby agrees to release Developer, the Hotel Unit Owner and the applicable Commercial Unit Owner from any and all claims for damages, liabilities and/or losses suffered as a result of the existence of the hotel and/or (c) all expenses related to the Commercial Unit and the operations from the Hotel Unit and/or any Commercial Unit, and the noises, inconveniences and disruptions resulting therefrom.**

16.6    No Improper Uses.  No improper, offensive, hazardous or unlawful use shall be made of the Condominium or Association Property or any part thereof, and all valid laws, zoning ordinances and regulations of all governmental bodies having jurisdiction thereover shall be observed.  Violations of laws, orders, rules, regulations or requirements of any governmental agency having jurisdiction thereover, relating to any portion of the Condominium and/or Association Property, shall be corrected by, and at the sole expense of, the party obligated to maintain or repair such portion of the Condominium Property, as elsewhere herein set forth.  Notwithstanding the foregoing and any provisions of this Declaration, the Articles of Incorporation or By-Laws, the Association shall not be liable to

(Reserved for Clerk of Court)

any person(s) for its failure to enforce the provisions of this Section 16.6.  No activity specifically permitted by this Declaration shall be deemed to be a violation of this Section.

16.7     Leases.  It is intended that the Residential Units may be used for transient and/or hotel rentals.  As such, leasing of Units or portions thereof shall not be subject to the approval of the Association and/or any other limitations, other than as expressly provided herein.  However, all leasing of Units or portions thereof shall be made in accordance with all applicable zoning ordinances and other limitations which are now or hereafter imposed by the City of Fort Lauderdale.

The lease of a Residential Unit for a term of six (6) months or less is subject to a tourist development tax assessed pursuant to Section 125.0104, Florida Statutes.  A Residential Unit Owner leasing his or her Unit for a term of six (6) months or less agrees, and shall be deemed to have agreed, for such Owner, and his or her heirs, personal representatives, successors and assigns, as appropriate, to hold the Association, the Developer and all other Unit Owners harmless from and to indemnify them for any and all costs, claims, damages, expenses or liabilities whatsoever, arising out of the failure of such Unit Owner to pay the tourist development tax and/or any other tax or surcharge imposed by the State of Florida, the County or the City with respect to rental payments or other charges under the lease, and such Unit Owner shall be solely responsible for and shall pay to the applicable taxing authority, prior to delinquency, the tourist development tax and/or any other tax or surcharge due with respect to rental payments or other charges under the lease.

Every lease of a Unit shall specifically provide (or, if it does not, shall be automatically deemed to provide) that a material condition of the lease shall be the tenant's full compliance with the covenants, terms, conditions and restrictions of this Declaration (and all Exhibits hereto) and with any and all rules and regulations adopted by the Hotel Unit Owner from time to time, including, without limitation, any and all regulations and/or procedures established by applicable law and/or adopted by the Hotel Unit Owner regarding mandatory check-in for Owners and residents, coordination of charging privileges and other matters reasonably necessary to allow Owners and hotel guests to be well integrated into a unified structure and operation. The Unit Owner will be jointly and severally liable with the tenant to the Association and/or Hotel Unit Owner, as applicable, for any amount which is required by the Association and/or the Hotel Unit Owner to repair any damage to the Common Elements, the Hotel Unit and/or the Shared Components resulting from acts or omissions of tenants (as determined in the sole discretion of the Association as to Common Elements or the Hotel Unit Owner as to the Hotel Unit or Shared Components) and to pay any claim for injury or damage to property caused by the negligence of the tenant and special charges may be levied against the Unit therefor.  All tenancies are hereby made subordinate to any lien filed by the Condominium Association or the Hotel Unit Owner, whether prior or subsequent to such lease.  Notwithstanding the foregoing, there shall be no minimum lease term for the rental of Units, nor shall there be a maximum number of times that a Unit may be leased.  There shall be no amendment to this Section 16.7, or to any other provision of this Declaration which shall impair the rights established in this Section 16.7, without the prior approval of four fifths (4/5) of the entire voting interests of the Unit Owners.

16.8     Weight and Sound Restriction.  No hard and/or heavy surface floor coverings, such as tile, marble, wood, terrazzo and the like shall be permitted unless: (i) installed by, or at the direction of, the Developer, or (ii) first approved in writing by the Hotel Unit Owner.  Each Unit Owner is solely responsible for floor leveling due to minor inconsistencies of the concrete slab construction and leveling, feathering and patching required to meet the requirements of the applicable South Florida Building Code.  Chipping, grinding and/or bushing of the concrete slab is expressly prohibited, due to the post tension design of the Building.  The installation of the insulation materials shall be performed in a manner that

Declaration
- 32 -

(Reserved for Clerk of Court)

provides proper mechanical isolation of the flooring materials from any rigid part of the building structure, whether of the concrete subfloor (vertical transmission) or adjacent walls and fittings (horizontal transmission) and must be installed prior to the Unit being occupied. Owners will be held strictly liable for violations of these restrictions and for all damages resulting therefrom and the Hotel Unit Owner has the right to require immediate removal of violations. Applicable warranties of the Developer, if any, shall be voided by violations of these restrictions and requirements. Each Owner, by acceptance of a deed or other conveyance of their Unit, hereby acknowledges and agrees that sound transmission in a multi-story building such as the Condominium is very difficult to control, and that noises from adjoining or nearby Units and or noises and/or vibrations from HVAC and/or mechanical equipment can often be heard in another Unit. The Developer does not make any representation or warranty as to the level of sound transmission between and among Units and the other portions of the Condominium Property and/or as to the level of sound transmission and/or vibration from HVAC and/or mechanical equipment and each Unit Owner hereby waives and expressly releases any such warranty and claim for loss or damages resulting from sound transmission and/or vibration.

16.9    Exterior Improvements. Without limiting the generality of Sections 8.1 or 16.4 hereof, but subject to any provision of this Declaration specifically permitting same, no Unit Owner shall cause anything to be affixed or attached to, hung, displayed or placed on the exterior walls, doors, balconies or windows of the Building (including, but not limited to, awnings, signs, storm shutters, screens, window tinting, furniture, fixtures and equipment), without the prior written consent of the Hotel Unit Owner.

16.10   Access to Units. In order to facilitate access to Units by the Association for the purposes enumerated in Section 9.1 hereof, it shall be the responsibility of all Unit Owners to deliver a set of keys (or access card or code, as may be applicable) to their respective Units to the Association and the Hotel Unit Owner to use in the performance of its functions. No Owner shall change the locks to his or her Unit. The Hotel Unit Owner shall have the right to adopt reasonable regulations from time to time regarding access control and check-in, check-out procedures which shall be applicable to both hotel guests and Unit Owners.

16.11   Mitigation of Dampness and Humidity. No Unit Owner shall install, within his or her Unit, or upon the Common Elements or Association Property, non-breathable wall-coverings, low-permeance paints or mirrored wall coverings. Additionally, any and all built-in casework, furniture, and or shelving in a Unit must be installed over floor coverings to allow air space and air movement and shall not be installed with backboards flush against any gypsum board wall. Additionally, all Unit Owners, whether or not occupying the Unit, shall periodically run the air conditioning system to maintain the Unit temperature, whether or not occupied, at 78°F, to minimize humidity in the Unit. Leaks, leaving exterior doors or windows open, wet flooring and moisture will contribute to the growth of mold, mildew, fungus or spores. Each Unit Owner, by acceptance of a deed, or otherwise acquiring title to a Unit, shall be deemed to have agreed that neither Developer, nor the Hotel Unit Owner is responsible, and each hereby disclaims any responsibility for any illness, personal injury, death or allergic reactions which may be experienced by the Unit Owner, its family members and/or its or their guests, tenants and invitees and/or the pets of all of the aforementioned persons, as a result of mold, mildew, fungus or spores. It is the Unit Owner's responsibility to keep the Unit clean, dry, well-ventilated and free of contamination. While the foregoing are intended to minimize the potential development of molds, fungi, mildew and other mycotoxins, each Owner understands and agrees that there is no method for completely eliminating the development of molds or mycotoxins. The Developer does not make any representations or warranties regarding the existence or development of molds or mycotoxins and each Owner shall be deemed to waive and expressly release any such warranty and claim for loss or damages resulting from the existence and/or development of same. In furtherance of the foregoing, in the event that the Association and/or the Hotel Unit Owner reasonably believes that the provisions of this

(Reserved for Clerk of Court)

Section 16.11 are not being complied with, then, the Association and/or the Hotel Unit Owner shall have the right (but not the obligation) to enter the Unit (without requiring the consent of the Owner or any other party) to turn on the air conditioning in an effort to cause the temperature of the Unit to be maintained as required hereby (with all utility consumption costs to be paid and assumed by the Unit Owner).

16.12 <u>Antennas, Satellite Dishes</u>. To the extent permitted by applicable law, no Owner may install any antenna, satellite dish or other transmitting or receiving apparatus in or upon his or her Unit (and/or areas appurtenant thereto).

16.13 <u>Storage on Balconies/Terraces</u>. No equipment, materials or other items shall be kept or stored or used on any balcony or terrace area of the Condominium, including but not limited to towels, clothing, bicycles, without the prior written approval of the Hotel Unit Owner. In no event shall BBQ's and/or any other open flame cooking devices be utilized and/or maintained on balconies and/or terraces.

16.14 <u>Open House</u>. No person shall be permitted to have an "open house", a "broker's open" or host any other event intended to attract multiple prospects at a single time, in connection with any attempt to sell or lease a Unit.

16.15 <u>Effect on Developer</u>. Subject to the following exceptions, the restrictions and limitations set forth in this Section 16 shall not apply to the Developer nor to Units owned by the Developer. The Developer shall not be exempt from any restrictions, if any, relating to requirements that leases or lessees be approved by the Association, pet restrictions, occupancy of Units based on age and vehicular restrictions, except as such vehicular restrictions relate to Developer's construction, maintenance and marketing activities.

17. <u>Selling, Leasing and Mortgaging of Units</u>. Subject to the provisions of this Declaration, each Unit Owner shall have the right to sell, lease or mortgage his Unit without restriction. When a Unit is leased, a tenant shall have all use rights in Association Property and those Common Elements otherwise readily available for use generally by Unit Owners, and the Owner of the leased Unit shall not have such rights, except as a guest. Nothing herein shall interfere with the access rights of the Unit Owner as a landlord pursuant to Chapter 83, Florida Statutes. The Association shall have the right to adopt rules to prohibit dual usage by a Unit Owner and a tenant of Association Property and Common Elements otherwise readily available for use generally by Owners.

18. <u>Compliance and Default</u>. The Association, each Unit Owner, occupant of a Unit, tenant and other invitee of a Unit Owner shall be governed by and shall comply with the terms of this Declaration and all exhibits annexed hereto and the rules and regulations adopted pursuant to those documents, as the same may be amended from time to time and the provisions of all of such documents shall be deemed incorporated into any lease of a Unit whether or not expressly stated in such lease. The Association (and Unit Owners, if appropriate) shall be entitled to the following relief in addition to the remedies provided by the Act:

18.1 <u>Mandatory Nonbinding Arbitration of Disputes</u>. Prior to the institution of court litigation, the parties to a Dispute shall petition the Division for nonbinding arbitration. The arbitration shall be conducted according to rules promulgated by the Division and before arbitrators employed by the Division. The filing of a petition for arbitration shall toll the applicable statute of limitation for the applicable Dispute, until the arbitration proceedings are completed. Any arbitration decision shall be presented to the parties in writing, and shall be deemed final if a complaint for trial <u>de novo</u> is not filed in a court of competent jurisdiction in which the Condominium is located within thirty (30) days following the issuance of the arbitration decision. The prevailing party in the arbitration proceeding shall be awarded the costs of the arbitration, and attorneys' fees and costs incurred in connection with the proceedings. The party who files a complaint for a trial <u>de novo</u> shall

(Reserved for Clerk of Court)

be assessed the other party's arbitration costs, courts costs and other reasonable costs, including, without limitation, attorneys' fees, investigation expenses and expenses for expert or other testimony or evidence incurred after the arbitration decision, if the judgment upon the trial de novo is not more favorable than the arbitration decision. If the judgment is more favorable, the party who filed a complaint for trial de novo shall be awarded reasonable court costs and attorneys' fees. Any party to an arbitration proceeding may enforce an arbitration award by filing a petition in a court of competent jurisdiction in which the Condominium is located. A petition may not be granted unless the time for appeal by the filing of a complaint for a trial de novo has expired. If a complaint for a trial de novo has been filed, a petition may not be granted with respect to an arbitration award that has been stayed. If the petition is granted, the petitioner may recover reasonable attorneys' fees and costs incurred in enforcing the arbitration award.

18.2    Negligence and Compliance. A Unit Owner and/or tenant of a Unit shall be liable for the expense of any maintenance, repair or replacement made necessary by his or her negligence or by that of any member of his or her family or his or her guests, employees, agents or lessees, but only to the extent such expense is not met by the proceeds of insurance actually collected in respect of such negligence by the Association and/or Hotel Unit Owner, as applicable. In the event a Unit Owner, tenant or occupant fails to maintain a Unit or fails to cause such Unit to be maintained, or fails to observe and perform all of the provisions of the Declaration, the By-Laws, the Articles of Incorporation of the Association, applicable rules and regulations, or any other agreement, document or instrument affecting the Condominium Property or administered by the Association or Hotel Unit Owner, in the manner required, the Association or Hotel Unit Owner, as applicable, shall have the right to proceed in equity to require performance and/or compliance, to impose any applicable fines, to sue at law for damages, and to charge the Unit Owner for the sums necessary to do whatever work is required to put the Unit Owner or Unit in compliance, provided, however, that nothing contained in this Section 18.2 shall authorize the Association to enter a Unit to enforce compliance. In any proceeding arising because of an alleged failure of a Unit Owner, a tenant or the Association to comply with the requirements of the Act, this Declaration, the exhibits annexed hereto, or the rules and regulations adopted pursuant to said documents, as the same may be amended from time to time, the prevailing party shall be entitled to recover the costs of the proceeding and such reasonable attorneys' fees (including appellate attorneys' fees). A Unit Owner prevailing in an action with the Association, in addition to recovering his reasonable attorneys' fees, may recover additional amounts as determined by the court to be necessary to reimburse the Unit Owner for his or her share of Assessments levied by the Association to fund its expenses of the litigation.

19.    Termination of Condominium. The Condominium shall continue until (i) terminated by casualty loss, condemnation or eminent domain, as more particularly provided in this Declaration, or (ii) such time as withdrawal of the Condominium Property from the provisions of the Act is authorized by a vote of Owners owning at least 80% of the applicable interests in the Common Elements and by the Primary Institutional First Mortgagee. In the event such withdrawal is authorized as aforesaid, the Condominium Property shall be subject to an action for partition by any Unit Owner, mortgagee or lienor as if owned in common in which event the net proceeds of the partition sale shall be divided among all Unit Owners in proportion to their respective interests in the Common Elements, provided, however, that no payment shall be made to a Unit Owner until there has first been paid off out of his share of such net proceeds all mortgages and liens on his Unit in the order of their priority. The termination of the Condominium, as aforesaid, shall be evidenced by a certificate of the Association executed by its President and Secretary, certifying as to the basis of the termination and said certificate shall be recorded among the public records of the County.

20.    Additional Rights of Mortgagees and Others.

(Reserved for Clerk of Court)

20.1 <u>Availability of Association Documents</u>. The Association shall have current and updated copies of the following available for inspection by Institutional First Mortgagees during normal business hours or under other reasonable circumstances as determined by the Board: (a) this Declaration; (b) the Articles; (c) the By-Laws; (d) the rules and regulations of the Association; and (e) the books, records and financial statements of the Association.

20.2 <u>Notices</u>. Any holder, insurer or guarantor of a mortgage on a Unit shall have, if first requested in writing, the right to timely written notice of:

(a)     any condemnation or casualty loss affecting a material portion of the Condominium and/or Association Property or the affected mortgaged Unit;

(b)     a sixty (60) day delinquency in the payment of the Assessments on a mortgaged Unit;

(c)     the occurrence of a lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Association;

(d)     any proposed action which requires the consent of a specified number of mortgage holders.

20.3 <u>Additional Rights</u>. Institutional First Mortgagees shall have the right, upon written request to the Association, to: (a) receive a copy of an audited financial statement of the Association for the immediately preceding fiscal year if such statements were prepared; and (b) receive notices of and attend Association meetings.

21.   <u>Nature of Improvements</u>.

21.1 <u>Resort Condominium</u>. The Condominium is classified as a "resort condominium" under Section 509.242, Florida Statutes because the owners of the Residential Units shall be permitted to lease their Units more than three (3) times in a calendar year for periods of less than thirty (30) days or one (1) calendar month, whichever is less.

21.2 <u>Telephone Service</u>. All telephone service within the Units is intended to operate through a central switchboard controlled by the Hotel Unit Owner (and which shall be deemed part of the Shared Components). Each Unit Owner, in addition to payment of the allocable share of the Hotel Shared Costs, shall also be obligated for payment of such usage charges as may be established from time to time by the Hotel Unit Owner in connection with usage of the switchboard, which may include, without limitation, long distance charges, long distance and local access surcharges and/or per call or per minute fees (and any and all revenue generated from the switchboard and/or the charges imposed in connection with usage of the switchboard shall be retained by he Hotel Unit Owner for its own account). The Hotel Unit Owner shall be entitled to all collection remedies to collect all such charges and surcharges as are available for the collection of the Unit's allocable share of the Hotel Shared Costs, including, without limitation, the right to terminate switchboard services to the Unit and/or to impose a lien upon the Unit (and the right to foreclose that lien in the same manner as it may foreclose the lien for an Owner's failure to pay its share of the Hotel Shared Costs).

21.3 <u>City Zoning Designation</u>. As set forth in Section 16.1 above, the City's zoning designation for the Condominium Property is "ABA". As a result of such designation and pursuant to applicable City, County and State laws, codes, ordinances and regulations (as all of same may be modified from time to time) there is no assurance that a Unit Owner (or any member of the Unit Owner's family, nor any person legally dependent upon the Unit Owner) may establish a permanent residence at the Unit or any real property contiguous thereto, or rely on the ability to use the Unit address for the purpose of student or voter

(Reserved for Clerk of Court)

registration, obtaining a driver's license or registration of a motor vehicle. Each Owner understands and agrees that it shall be bound by the limitations of the zoning designation and hereby releases the Developer, and Hotel Unit Owner (and its and their members, and its and their partners, shareholders and employees) from any and all liabilities and/or damages resulting from same.

21.4   Hotel Matters.   Each Unit Owner understands and agrees that the Hotel Unit Owner intends (without creating any obligation) to retain Trump Florida Management LLC (including its affiliates, "Trump Management") as the initial Hotel Manager and to obtain a limited license agreement from Donald J. Trump ("Trump") to operate the hotel under the tradename "Trump International Hotel & Tower Fort Lauderdale". Each Unit Owner further understands and agrees that in the event that any agreement between the Hotel Unit Owner, or the affiliates of the Hotel Unit Owner, and Trump and/or Trump Management is terminated for any reason, whether at the expiration of the term or earlier, all use of Trump's tradename and Trump's trademark or service marks shall cease and all indicia or connection between the Condominium and Trump and/or Trump Management, including signs or other materials bearing any of Trump's trademarks or servicemarks or tradenames shall be removed from the Condominium. Additionally, each Unit Owner acknowledges and agrees that any use of any of Trump's tradenames and Trump's trademarks or service marks, without proper licensing from Trump, is expressly prohibited.

22.   Covenant Running With the Realty.   All provisions of this Declaration, the Articles, By-Laws and applicable rules and regulations of the Association, shall, to the extent applicable and unless otherwise expressly herein or therein provided to the contrary, be perpetual and be construed to be covenants running with the Realty and with every part thereof and interest therein, and all of the provisions hereof and thereof shall be binding upon and inure to the benefit of the Developer and subsequent owner(s) of the Realty or any part thereof, or interest therein, and their respective heirs, personal representatives, successors and assigns, but the same are not intended to create nor shall they be construed as creating any rights in or for the benefit of the general public. All present and future Unit Owners, tenants and occupants of Units shall be subject to and shall comply with the provisions of this Declaration, the Articles, By-Laws and applicable rules and regulations, all as they may be amended from time to time. The acceptance of a deed or conveyance, or the entering into of a lease, or the entering into occupancy of any Unit, shall constitute an adoption and ratification of the provisions of this Declaration, and the Articles, By-Laws and applicable rules and regulations of the Association, all as they may be amended from time to time, including, but not limited to, a ratification of any appointments of attorneys-in-fact contained herein.

23.   Disclaimer of Warranties.   **Except only for those warranties provided in Section 718.203, Florida Statutes (to the extent applicable and not yet expired), to the maximum extent lawful Developer hereby disclaims any and all and each and every express or implied warranties, whether established by statutory, common, case law or otherwise, as to the design, construction, sound and/or odor transmission, existence and/or development of molds, mildew, toxins or fungi, furnishing and equipping of the Condominium Property, including, without limitation, any implied warranties of habitability, fitness for a particular purpose or merchantability, compliance with plans, all warranties imposed by statute (other than those imposed by Section 718.203, Florida Statutes, and then only to the extent applicable and not yet expired) and all other express and implied warranties of any kind or character. Developer has not given and the Unit Owner has not relied on or bargained for any such warranties. Each Unit Owner, by accepting a deed to a Unit, or other conveyance thereof, shall be deemed to represent and warrant to Developer that in deciding to acquire the Unit, the Unit Owner relied solely on such Unit Owner's independent inspection of the Unit and the Condominium. The Unit Owner has not received nor relied on any warranties and/or representations from Developer of any kind, other than as expressly provided herein.**

(Reserved for Clerk of Court)

All Unit Owners, by virtue of their acceptance of title to their respective Units (whether from the Developer or another party) shall be deemed to have automatically waived all of the aforesaid disclaimed warranties and incidental and consequential damages. The foregoing shall also apply to any party claiming by, through or under a Unit Owner, including a tenant thereof.

Further, given the climate and humid conditions in South Florida, molds, mildew, toxins and fungi may exist and/or develop within the Unit and/or the Condominium Property. Each Owner is hereby advised that certain molds, mildew, toxins and/or fungi may be, or if allowed to remain for a sufficient period may become, toxic and potentially pose a health risk. By acquiring title to a Unit, each Owner shall be deemed to have assumed the risks associated with molds, mildew, toxins and/or fungi and to have released the Developer and Hotel Unit Owner from any and all liability resulting from same, including, without limitation, any liability for incidental or consequential damages (which may result from, without limitation, the inability to possess the Unit, inconvenience, moving costs, hotel costs, storage costs, loss of time, lost wages, lost opportunities and/or personal injury). Without limiting the generality of the foregoing, leaks, leaving exterior doors or windows open, wet flooring and moisture will contribute to the growth of mold, mildew, fungus or spores. Each Unit Owner, by acceptance of a deed, or otherwise acquiring title to a Unit, shall be deemed to have agreed that Developer is not responsible, and hereby disclaims any responsibility for any illness or allergic reactions which may be experienced by the Unit Owner, its family members and/or its or their guests, tenants and invitees as a result of mold, mildew, fungus or spores. It is the Unit Owner's responsibility to keep the Unit clean, dry, well-ventilated and free of contamination.

Each Unit Owner recognizes and agrees that the Condominium is intended to be operated as a hotel, and to offer services and amenities to hotel guests and other members of the public. As a result of the foregoing, vehicular traffic at the entry to the hotel or from near and around the Condominium may be very heavy and noise from such traffic and/or from the activities at the hotel, in proximity to the hotel and from the persons attending same may be detectable from the Condominium and create a nuisance. By acquiring title to a Unit, each Unit Owner shall be deemed to have assumed the risks associated with such heavy traffic and potential delays resulting from the proximity to, and activities from, the hotel, and the excessive noise that may result therefrom, and to have fully released the Developer from any and all liability resulting from same.

Each Owner, by acceptance of a deed or other conveyance of a Unit, understands and agrees that there are various methods for calculating the square footage of a Unit. Additionally, as a result of in the field construction, other permitted changes to the Unit, and settling and shifting of improvements, actual square footage of a Unit may also be affected. By accepting title to a Unit, the applicable Owner(s) shall be deemed to have conclusively agreed to accept the size and dimensions of the Unit. Without limiting the generality of this Section 23, Developer does not make any representation or warranty as to the actual size, dimensions (including ceiling heights) or square footage of any Unit, and each Owner shall be deemed to have fully waived and released any such warranty and claims for losses or damages resulting from any variances. Notwithstanding the foregoing, nothing herein shall excuse the Developer from any liability under, or compliance with, the provisions of Section 718.506, Florida Statutes.

24. Additional Provisions.

   24.1 Notices. All notices to the Association required or desired hereunder or under the By-Laws of the Association shall be sent by certified mail (return receipt requested) to the Association in care of its office at the Condominium, or to such other address as the Association may hereafter designate from time to time by notice in writing to all Unit Owners. All notices to the Hotel Unit Owner required or desired hereunder or under the

(Reserved for Clerk of Court)

By-Laws of the Association shall be sent by certified mail (return receipt requested) to the Hotel Unit Owner in care of its office at the Condominium, or to such other address as the Hotel Unit Owner may hereafter designate from time to time by notice in writing to all Unit Owners. Except as provided specifically in the Act, all notices to any Unit Owner shall be sent by first class mail to the Condominium address of such Unit Owner, or such other address as may have been designated by him from time to time, in writing, to the Association. All notices to mortgagees of Units shall be sent by first class mail to their respective addresses, or such other address as may be designated by them from time to time, in writing to the Association. All notices shall be deemed to have been given when mailed in a postage prepaid sealed wrapper, except notices of a change of address, which shall be deemed to have been given when received, or 5 business days after proper mailing, whichever shall first occur.

24.2 Mortgagees. Anything herein to the contrary notwithstanding, neither the Association nor the Hotel Unit Owner shall be responsible to any mortgagee or lienor of any Unit hereunder, and each may assume the Unit is free of any such mortgages or liens, unless written notice of the existence of such mortgage or lien is received by the Association and Hotel Unit Owner, as applicable.

24.3 Exhibits. There is hereby incorporated in this Declaration all materials contained in the Exhibits annexed hereto, except that as to such Exhibits, any conflicting provisions set forth therein as to their amendment, modification, enforcement and other matters shall control over those hereof.

24.4 Signature of President and Secretary. Wherever the signature of the President of the Association is required hereunder, the signature of a vice-president may be substituted therefor, and wherever the signature of the Secretary of the Association is required hereunder, the signature of an assistant secretary may be substituted therefor, provided that the same person may not execute any single instrument on behalf of the Association in two separate capacities.

24.5 Governing Law. Should any dispute or litigation arise between any of the parties whose rights or duties are affected or determined by this Declaration, the Exhibits annexed hereto or applicable rules and regulations adopted pursuant to such documents, as the same may be amended from time to time, said dispute or litigation shall be governed by the laws of the State of Florida.

24.6 Severability. The invalidity in whole or in part of any covenant or restriction, or any section, subsection, sentence, paragraph, clause, phrase or word, or other provision of this Declaration, the Exhibits annexed hereto, or applicable rules and regulations adopted pursuant to such documents, as the same may be amended from time to time, shall not affect the validity of the remaining portions thereof which shall remain in full force and effect.

24.7 Waiver. The failure of the Association or any Unit Owner to enforce any covenant, restriction or other provision of the Act, this Declaration, the exhibits annexed hereto, or the rules and regulations adopted pursuant to said documents, as the same may be amended from time to time, shall not constitute a waiver of their right to do so thereafter.

24.8 Ratification. Each Unit Owner, by reason of having acquired ownership (whether by purchase, gift, operation of law or otherwise), and each occupant of a Unit, by reason of his occupancy, shall be deemed to have acknowledged and agreed that all of the provisions of this Declaration, and the Articles and By-Laws of the Association, and applicable rules and regulations, are fair and reasonable in all material respects.

24.9 Execution of Documents; Attorney-In-Fact. Without limiting the generality of other Sections of this Declaration and without such other Sections limiting the generality hereof, each

(Reserved for Clerk of Court)

Owner, by reason of the acceptance of a deed to such Owner's Unit, hereby agrees to execute, at the request of the Developer, all documents or consents which may be required by all governmental agencies to allow the Developer and its affiliates to complete the plan of development of the Condominium as such plan may be hereafter amended, and each such Owner further appoints hereby and thereby the Developer as such Owner's agent and attorney-in-fact to execute, on behalf and in the name of such Owners, any and all of such documents or consents. This power of attorney is irrevocable and coupled with an interest. Further, the Hotel Unit Owner is hereby granted the power to execute all documents or consents, on behalf of all Residential Unit Owners and Commercial Unit Owners (and their mortgagees), required by all governmental and/or quasi-governmental agencies in connection with land use and development matters affecting the Condominium Property (including, without limitation, plats, waivers of plat, unities of title, covenants in lieu thereof, etc.), and in that regard, each Owner of a Residential Unit or Commercial Unit, by acceptance of the deed to such Owner's Unit, and each mortgagee of a Unit, by acceptance of a lien on said Unit, appoints and designates the Hotel Unit Owner, as such Owner's agent and attorney-in-fact to execute any and all such documents or consents. The provisions of this Section may not be amended without the consent of the Developer.

24.10   Gender; Plurality. Wherever the context so permits, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be deemed to include all or no genders.

24.11   Captions. The captions herein and in the Exhibits annexed hereto are inserted only as a matter of convenience and for ease of reference and in no way define or limit the scope of the particular document or any provision thereof.

24.12   Liability of the Association. Notwithstanding anything contained herein or in the Articles of Incorporation, By-laws, any rules or regulations of the Association or any other document governing or binding the association (collectively, the "Association Documents"), the Association, except to the extent specifically provided to the contrary herein, shall not be liable or responsible for, or in any manner a guarantor or insurer of, the health, safety or welfare of any Owner, occupant or user of any portion of the Condominium and/or Association Property including, without limitation, Owners and their guests, invitees, agents, servants, contractors or subcontractors or for any property of any such persons. Without limiting the generality of the foregoing:

(a)   it is the express intent of the Association Documents that the various provisions thereof which are enforceable by the Association and which govern or regulate the uses of the properties have been written, and are to be interpreted and enforced, for the sole purpose of enhancing and maintaining the enjoyment of the properties and the value thereof;

(b)   the Association is not empowered, and has not been created, to act as an entity which enforces or ensures the compliance with the laws of the United States, State of Florida, County and/or any other jurisdiction or the prevention of tortious activities; and

(c)   the provisions of the Association Documents setting forth the uses of assessments which relate to health, safety and/or welfare shall be interpreted and applied only as limitations on the uses of assessment funds and not as creating a duty of the Association to protect or further the health, safety or welfare of any person(s), even if assessment funds are chosen to be used for any such reason.

Each Owner (by virtue of his acceptance of title to his Unit) and each other person having an interest in or lien upon, or making use of, any portion of the properties (by virtue of accepting such interest or lien or making such use) shall be bound by this provision and

(Reserved for Clerk of Court)

shall be deemed to have automatically waived any and all rights, claims, demands and causes of action against the Association arising from or connected with any matter for which the liability of the Association has been disclaimed hereby. As used herein, "Association" shall include within its meaning all of Association's directors, officers, committee and board members, employees, agents, contractors (including management companies), subcontractors, successors and assigns. The provisions hereof shall also inure to the benefit of Developer, which shall be fully protected hereby.

24.13 Liability of the Hotel Unit Owner. Notwithstanding anything contained herein or in any of the exhibits referenced herein or any other document governing or binding the Hotel Unit Owner (collectively, the "Hotel Documents"), the Hotel Unit Owner, except to the extent specifically provided to the contrary herein, shall not be liable or responsible for, or in any manner a guarantor or insurer of, the health, safety or welfare of any Owner, occupant or user of any portion of the Condominium and/or Association Property including, without limitation, Owners and their guests, invitees, agents, servants, contractors or subcontractors or for any property of any such persons. Without limiting the generality of the foregoing:

(a) it is the express intent of the Hotel Documents that the various provisions thereof which are enforceable by the Hotel Unit Owner and which govern or regulate the uses of the properties have been written, and are to be interpreted and enforced, for the sole purpose of enhancing and maintaining the enjoyment of the properties and the value thereof; and

(b) the Hotel Unit Owner is not empowered, and does not exist, to act as an entity which enforces or ensures the compliance with the laws of the United States, State of Florida, County and/or any other jurisdiction or the prevention of tortious activities.

Each Owner (by virtue of acceptance of title to a Unit) and each other person having an interest in or lien upon, or making use of, any portion of the properties (by virtue of accepting such interest or lien or making such use) shall be bound by this provision and shall be deemed to have automatically waived any and all rights, claims, demands and causes of action against the Hotel Unit Owner arising from or connected with any matter for which the liability of the Hotel Unit Owner has been disclaimed hereby.

24.14 No Representations or Warranties. NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, HAVE BEEN GIVEN OR MADE BY DEVELOPER, HOTEL OWNER OR ITS OR THEIR AGENTS OR EMPLOYEES IN CONNECTION WITH ANY PORTION OF THE CONDOMINIUM PROPERTY, THE SHARED COMPONENTS, THEIR PHYSICAL CONDITION, ZONING, COMPLIANCE WITH APPLICABLE LAWS, MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR IN CONNECTION WITH THE SUBDIVISION, SALE, OPERATION, MAINTENANCE, COST OF MAINTENANCE, TAXES OR REGULATION THEREOF, EXCEPT (A) AS SPECIFICALLY AND EXPRESSLY SET FORTH IN THIS DECLARATION OR IN DOCUMENTS WHICH MAY BE FILED BY DEVELOPER OR HOTEL OWNER FROM TIME TO TIME WITH APPLICABLE REGULATORY AGENCIES, AND (B) AS OTHERWISE REQUIRED BY LAW. AS TO SUCH WARRANTIES WHICH CANNOT BE DISCLAIMED, AND TO OTHER CLAIMS, IF ANY, WHICH CAN BE MADE AS TO THE AFORESAID MATTERS, ALL INCIDENTAL AND CONSEQUENTIAL DAMAGES ARISING THEREFROM ARE HEREBY DISCLAIMED. ALL OWNERS, BY VIRTUE OF ACCEPTANCE OF TITLE TO THEIR RESPECTIVE UNITS (WHETHER FROM THE DEVELOPER OR ANOTHER PARTY) SHALL BE DEEMED TO HAVE AUTOMATICALLY WAIVED ALL OF THE AFORESAID DISCLAIMED WARRANTIES AND INCIDENTAL AND CONSEQUENTIAL DAMAGES.

# EXHIBIT F

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 08-062209 CACE (02)

JEROME SHAFFER and
SHARON SHAFFER,

      Plaintiffs,

v.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC,
DONALD TRUMP, ROY STILLMAN and
CORUS BANK, N.A.,

      Defendants.

_____/

Forwarded for Legal Key Imaging

RECEIVED

Docket ____

JUL 0 9 2009

Bilzin Sumberg Baena
Price & Axelrod LLP

## RUSSOMANNO & BORRELLO, P.A.'S MOTION FOR LEAVE
## TO WITHDRAW AS COUNSEL FOR DEFENDANTS

      Russomanno & Borrello, P.A., pursuant to Florida Rule of Judicial Administration

2.505(f)(1), hereby moves the Court for leave to withdraw as counsel for Defendants. In support

of its Motion, Russomanno & Borrello, P.A., states that the undersigned counsel represents SB

HOTEL ASSOCIATES LLC, ROY STILLMAN, DONALD TRUMP, TRUMP

ORGANIZATION, INC., TRUMP ORGANIZATION, LLC, BAYROCK GROUP, LLC,

CORUS BANK, N.A., and CHICAGO TITLE INSURANCE COMPANY in defense of claims

in litigation pertaining to the Trump International Hotel & Tower in Fort Lauderdale, Florida –

the project subject to this lawsuit. Recent events have given rise to conflicts in the interests of

one or more of these clients, which precludes the undersigned counsel from further representing

any of these clients in this matter. The undersigned's law firm has notified each of the

RUSSOMANNO & BORRELLO, P.A.

CASE NO.: 08-062209 CACE (02)

aforementioned clients of its intention to withdraw from further representing of any of them in this matter.

WHEREFORE, the undersigned law firm respectfully requests that the Court enter an Order permitting Russomanno & Borrello, P.A., to withdraw as defense counsel in the above-styled action and further relieving and discharging the law firm of Russomanno & Borrello, P.A., from all responsibility in connection with the above-styled action.

Respectfully submitted,

RUSSOMANNO & BORRELLO, P.A.
Museum Tower, Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

By: _____
Herman J. Russomanno (Fla. Bar No. 240346)
Herman J. Russomanno III (Fla. Bar No. 21249)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 1st day of June, 2009, by U.S. mail and email to:

| | |
|---|---|
| Jonathan Kline, Esq.<br>Jonathan Kline, P.A.<br>2761 Executive Park Drive<br>Weston, Florida 33331 | SB HOTEL ASSOCIATES LLC<br>505 Park Avenue<br>17th Floor<br>New York, NY 10022 |
| Corus Bank, N.A.<br>3959 N. Lincoln Avenue<br>Chicago, Illinois 60613 | The Trump Organization<br>725 Fifth Avenue<br>New York, New York 10022 |
| Bayrock Group LLC<br>725 Fifth Avenue<br>New York, N.Y. 10022 | |

_____
Herman J. Russomanno III

- 2 -
RUSSOMANNO & BORRELLO, P.A.

# EXHIBIT G

IN THE CIRCUIT COURT OF THE
SEVENTEEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

CIVIL DIVISION

CASE NO. 08-062209 CACE (02)

JEROME SHAFFER and
SHARON SHAFFER,

     Plaintiffs,

vs.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC, DONALD
TRUMP, ROY STILLMAN and CORUS
BANK, N.A.,

     Defendants.

_____/

**RECEIVED**
Docket Dept.
JUL 9 6 2009
Bilzin Sumberg Baena
Price & Axelrod LLP

**Forwarded for Legal Key Imaging**

## NOTICE OF APPEARANCE

    The law firm of Bilzin Sumberg Baena Price & Axelrod LLP, by and through the

undersigned counsel, hereby enters its appearance on behalf of Defendant, CORUS

BANK, N.A., in this matter, and requests that counsel and the Court henceforth serve all

pleadings and papers on the undersigned.

                Respectfully submitted,

                **BILZIN SUMBERG BAENA PRICE &
AXELROD LLP**
                *Attorneys for Defendant, CORUS BANK*
                200 South Biscayne Boulevard, Suite 2500
                Miami, Florida 33131-5340
                Tel: 305-350-2359
                Facsimile: 305-351-2261

                By: _____
                    DAVID W. TRENCH
                    Florida Bar No. 202975

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been delivered by facsimile and U.S. Mail on this the 24 day of July, 2009 to: Jonathan Kline, Esq., Jonathan Kline, PA, 2761 Executive Park Drive, Weston, Florida 33331; and to Herman J. Russomanno, Esq., Russomanno & Borrello, P.A., Museum Tower, Penthouse 2800; 150 West Flagler Street, Miami, Florida 33130

_____
DAVID W. TRENCH

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 • MIAMI, FLORIDA 33131-5340

# EXHIBIT H

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 08-062209 CACE (02)

JEROME SHAFFER and
SHARON SHAFFER,

     Plaintiffs,

v.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC,
DONALD TRUMP, ROY STILLMAN and
CORUS BANK, N.A.,

     Defendants.

_____/

**ORDER ON STIPULATION FOR SUBSTITUTION OF COUNSEL FOR DONALD J. TRUMP**

THIS CAUSE came before the Court on the Stipulation for Substitution for Counsel for Defendant, DONALD J. TRUMP, and being duly advised in the premises, it is hereby ORDERED AND ADJUDGED that the law firm of Murai Wald Biondo & Moreno, P.A., shall be substituted as counsel for the aforementioned Defendant, in place of the law firm of Russomanno & Borrello, P.A., and that the law firm of Russomanno & Borrello, P.A., shall be relieved of any further responsibility or obligation in this matter.

DONE AND ORDERED in Chambers at Broward County, Florida this _____ day of _____, 2009.

JOHN B. BOWMAN

JUL 1 3

_____
CIRCUIT COURT JUDGE COPY

cc:  All counsel and parties of record

# EXHIBIT I

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 08-062209 CACE (02)

JEROME SHAFFER and
SHARON SHAFFER,

     Plaintiffs,

v.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC,
DONALD TRUMP, ROY STILLMAN and
CORUS BANK, N.A.,

     Defendants.

_____/

RECEIVED
Docket Dept

JUL 2 3 2009

Bilzin Sumberg Baena
Price & Axelrod LLP

Forwarded for **Legal Key Imaging**

## ORDER ON STIPULATION FOR SUBSTITUTION OF COUNSEL FOR DEFENDANTS SB HOTEL ASSOCIATES, LLC, BAYROCK GROUP, LLC AND ROY STILLMAN

THIS CAUSE came before the Court on the Stipulation for Substitution for Counsel for

Defendants, SB HOTEL ASSOCIATES, LLC, BAYROCK GROUP, LLC AND ROY

STILLMAN, and being duly advised in the premises, it is hereby ORDERED AND ADJUDGED

that the law firm of Shutts & Bowen LLP, shall be substituted as counsel for the aforementioned

Defendants, in place of the law firm of Russomanno & Borrello, P.A., and that the law firm of

Russomanno & Borrello, P.A., shall be relieved of any further responsibility or obligation in this

matter.

DONE AND ORDERED in Chambers at Broward County, Florida this _____ day of

JOHN B. BOWMAN

_____, 2009.

JUL 2 0

_____
CIRCUIT COURT JUDGE COPY

cc:  All counsel and parties of record

# EXHIBIT J

IN THE CIRCUIT COURT OF THE
SEVENTEEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

CIVIL DIVISION

JEROME SHAFFER and                        CASE NO. 08-062209 CACE (02)
SHARON SHAFFER,

      Plaintiffs,

vs.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC, DONALD
TRUMP, ROY STILLMAN and CORUS
BANK, N.A.,

      Defendants.
_____/

## MOTION TO SUBSTITUTE PARTY AND MOTION FOR STAY
## PURSUANT TO 12 USC § 1821 (d) (12) (A) (ii)

      Federal Deposit Insurance Corporation ("FDIC"), as Receiver of Corus Bank,

N.A., a defendant in this case, moves this Honorable Court to enter orders allowing the

substitution of a party and staying this proceeding for 90 days and for grounds states:

      1.     Federal Deposit Insurance Corporation is a corporation organized and

existing pursuant to an Act of Congress of the United States, known as the Federal

Deposit Insurance Act, 12 U.S.C. § 1811, et seq., with its principal place of business

located in Washington, D.C.

      2.     On September 11, 2009, by determination of the Office of the Comptroller

of the Currency ("OCC"), FDIC was appointed as Receiver for defendant Corus Bank,

N.A. ("Corus Bank").   See OCC Receivership Determination and Appointment of

Receiver, dated September 11, 2009, and the FDIC acceptance of appointment, dated September 11, 2009, both included in Exhibit A hereto and filed herewith.

3.      Pursuant to 12 U.S.C. § 1821 (c)(2)(A) and (d)(2)(A), FDIC, as Receiver of Corus Bank, has taken charge of the assets and affairs of Corus Bank and has succeeded to all of its rights, titles and powers and privileges.  As such, FDIC, as Receiver, stands in the place and stead of Corus Bank with respect to all matters.

4.      Pursuant to 12 U.S. C. § 1821 (d)(12)(A)(ii), after the appointment of a receiver for an insured depository institution, the receiver may request a stay not to exceed 90 days "in any judicial action or proceeding to which such institution is or becomes a party."

5.      Section 1821 (d)(12)(B) provides that upon receipt of a request by a receiver "for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court **shall** grant such stay as to all parties." (emphasis added).

WHEREFORE, FDIC, as Receiver of Corus Bank, N.A. requests this Honorable Court to enter orders:

1.      Substituting FDIC, as Receiver of Corus Bank, N.A. as defendant in this case; and

2.      Staying the proceedings in this case for 90 days effective on the date of this motion pursuant to 12 U.S.C. §§ 1821 (d)(12)(A) and (B).

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for Federal Deposit Insurance Corporation, as Receiver Defendant, CORUS BANK, N.A.*
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5340
Tel: 305-350-2359
Fax: 305-351-2261

By: _____
　　　David W. Trench
　　　Florida Bar No.  202975

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been delivered by facsimile and U.S. Mail on this 15th day of September, 2009 to: Jonathan Kline, Esq., Jonathan Kline, P.A., 2761 Executive Park Drive, Weston, FL 33331; Lynette Ebeoglu McGuinness, Esq., Murai Wald Biodo & Moreno, 1200 Ponce De Leon Blvd., Coral Gables, FL 33134; and Stephen B. Gillman, Esq., Shutts & Bowen, LLP, 200 East Broward Boulevard, National City Center, Suite 2100, Fort Lauderdale, FL 33301.

_____
David W. Trench

# UNITED STATES OF AMERICA
## OFFICE OF THE COMPTROLLER OF THE CURRENCY
### WASHINGTON, D.C.

## Receivership Determination and Appointment of Receiver

Corus Bank, National Association
Chicago, Illinois
Charter Number 23005

WHEREAS, the Comptroller of the Currency has delegated to me the authority to appoint a receiver for a national bank under 12 U.S.C. §§ 191 and 1821(c)(5);

WHEREAS, the above captioned bank ("Bank") is insured by the Federal Deposit Insurance Corporation;

WHEREAS, from information available to the Office of the Comptroller of the Currency ("OCC") and pursuant to 12 U.S.C. § 191, I have determined that the following grounds exist for the appointment of a receiver for the Bank:

(1) The Bank's assets are less than its obligations to its creditors and others, including members of the institution. 12 U.S.C. § 1821(c)(5)(A).

(2) The Bank has experienced substantial dissipation of assets or earnings due to any unsafe or unsound practice. 12 U.S.C. § 1821(c)(5)(B)(ii).

(3) The Bank is in an unsafe or unsound condition to transact business. 12 U.S.C. § 1821(c)(5)(C).

(4) The Bank has incurred or is likely to incur losses that will deplete all or substantially all of its capital, and there is no reasonable prospect for the institution to become adequately capitalized (as defined in 12 U.S.C. § 1831o(b)) without Federal assistance. 12 U.S.C. § 1821(c)(5)(G).

(5) The Bank's unsafe or unsound practices or condition are likely to cause insolvency or substantial dissipation of assets or earnings. 12 U.S.C. § 1821(c)(5)(H)(i).

(6) The Bank's unsafe or unsound practices or condition are likely to weaken its condition. 12 U.S.C. § 1821(c)(5)(H)(ii).

I

EXHIBIT "A"

(7)  The Bank's unsafe or unsound practices or condition are likely to seriously prejudice the interests of its depositors or the Deposit Insurance Fund.  12 U.S.C. § 1821(c)(5)(H)(iii).

(8)  The Bank is undercapitalized (as defined in 12 U.S.C. § 1831o(b)) and has no reasonable prospect of becoming adequately capitalized.  12 U.S.C. § 1821(c)(5)(K)(i).

(9)  The Bank is undercapitalized (as defined in 12 U.S.C. § 1831o(b)) and has failed to submit a capital restoration plan acceptable to the OCC within the time prescribed under 12 U.S.C. § 1831o(e)(2)(D).  12 U.S.C. § 1821(c)(5)(K)(iii).

(10)  The Bank is critically undercapitalized, as defined in 12 U.S.C. § 1831o(b).  12 U.S.C. § 1821(c)(5)(L)(i).

**WHEREAS**, in my discretion, I have determined that the Federal Deposit Insurance Corporation should be appointed Receiver for the Bank;

**NOW THEREFORE**, pursuant to 12 U.S.C. §§ 191 and 1821(c) and the power, duty, and authority vested in me by law, I do hereby appoint the Federal Deposit Insurance Corporation as Receiver for the Bank, with all of the powers, duties, and responsibilities given to or imposed upon a receiver under the provisions of the laws of the United States which authorize and direct the appointment of such receiver.


Jennifer C. Kelly
Senior Deputy Comptroller
Midsize/Community Bank Supervision


Dated:  September 11, 2009



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

September 11, 2009

The Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-9990

Re:     Corus Bank, National Association, Charter Number 23005

To Whom It May Concern:

You have been appointed Receiver for the above captioned bank ("Bank") effective as of the date of this letter. A copy of the *Receivership Determination and Appointment of Receiver* for the Bank is enclosed.

Please send the Office of the Comptroller of the Currency a copy of any verification of assets prepared by the Federal Deposit Insurance Corporation.

Very truly yours,

Jennifer C. Kelly
Senior Deputy Comptroller
Midsize/Community Bank Supervision

Enclosure

I



**FDIC**
Division of Resolutions and Receiverships
**Dallas Regional Office**
1601 Bryan Street
Dallas, Texas 75201

Telephone (214) 754-0098

September 11, 2009

Office of the Comptroller of the Currency
Washington, D.C.

Subject:    **Corus Bank, National Association**
**Chicago, Illinois – In Receivership**
<u>**Acceptance of Appointment as Receiver**</u>

Dear Sir or Madam:

Please be advised that the Federal Deposit Insurance Corporation accepts its appointment as Receiver of the captioned depository institution, in accordance with the Federal Deposit Insurance Act, as amended.

Sincerely,

FEDERAL DEPOSIT INSURANCE CORPORATION

By: _Daniel M. Bell_
    Name: Daniel M. Bell
    Title:  Receiver-in-Charge

H.01.b LDCMFI/Accept Appointment as Receiver.doc

04/08

# EXHIBIT K

IN THE CIRCUIT COURT OF THE
SEVENTEEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

CIVIL DIVISION

JEROME SHAFFER and
SHARON SHAFFER,

    Plaintiffs,

vs.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC, DONALD
TRUMP, ROY STILLMAN and CORUS
BANK, N.A.,

    Defendants.

_____/

CASE NO. 08-062209-CACE (02)

**A TRUE COPY**

SEP 1 6 2009

HOWARD C. FORMAN
CLERK CIRCUIT COURT
BROWARD COUNTY, FL

**DOCKETED**

RECEIVED
Docket Dept.

SEP 1 7 2009

Bilzin Sumberg Baena
Price & Axelrod LLP

## NOTICE OF HEARING
(Motion Calendar)
(Scheduled On-line - Sequence Number 9)

**Forwarded for Legal Key Imaging**

PLEASE TAKE NOTICE that the undersigned counsel will bring up for hearing

before The Honorable John B. Bowman on **Thursday, October 8, 2009 at 8:45 a.m.** in

his Chambers at the Broward County Circuit Court, 201 S.E. 6th Street, Room 910A, Fort

Lauderdale, FL 33301, or soon thereafter as the following can be heard:

### Motion to Substitute Party and Motion for Stay
### Pursuant to 12 USC § 1821 (d) (12) (A) (ii)

I hereby certify that (A) I have made a good faith attempt to resolve this matter

prior to my noticing this motion for hearing, and (B) the issues before the Court may be

heard and resolved by the court within five (5) minutes.

In accordance with the Americans With Disabilities Act of 1990 (ADA), disabled persons
who, because of their disabilities, need special accommodations to participate in this proceeding
should contact the ADA Coordinately at 201 S.E. 6th St., Room 136, Fort Lauderdale Florida
33301 or Telephone Voice/TDD (954) 357-6364, not later than five (5) business days prior to

*1*

such proceeding. Telephone the Court Administrator for information: (1-800-955-8771) (TDD), or 1-800-955-8770 (V), via Florida Relay Service.

     PLEASE GOVERN YOURSELVES ACCORDINGLY.

          Respectfully submitted,

          **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
          *Attorneys for Federal Deposit Insurance Corporation, as Receiver Defendant, CORUS BANK, N.A.*
          200 South Biscayne Boulevard, Suite 2500
          Miami, Florida 33131-5340
          Tel: 305-350-2359
          Fax: 305-351-2261

          By: _____
              David W. Trench
              Florida Bar No. 202975

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been delivered by facsimile and U.S. Mail on this 16th day of September, 2009 to: Jonathan Kline, Esq., Jonathan Kline, P.A., 2761 Executive Park Drive, Weston, FL 33331; Lynette Ebeoglu McGuinness, Esq., Murai Wald Biodo & Moreno, 1200 Ponce De Leon Blvd., Coral Gables, FL 33134; and Stephen B. Gillman, Esq., Shutts & Bowen, LLP, 200 East Broward Boulevard, National City Center, Suite 2100, Fort Lauderdale, FL 33301.

              _____
              David W. Trench

# EXHIBIT L

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

CIVIL DIVISION

JEROME SHAFFER and
SHARON SHAFFER,

CASE NO. 08-062209 CACE (02)

     Plaintiffs,

vs.

SB HOTEL ASSOCIATES, LLC,
BAYROCK GROUP, LLC, DONALD
TRUMP, ROY STILLMAN and CORUS
BANK, N.A.,

     Defendants.

_____/

*Forwarded for Legal Key Imaging*

Docket Dept

OCI 0 9 2009

Bilzin Sumberg Baena
Price & Axelrod LLP

### NOTICE OF CANCELATION OF HEARING
(Motion Calendar - Scheduled On-line - Sequence Number 9)

     PLEASE TAKE NOTICE that the undersigned counsel has canceled the hearing scheduled before The Honorable John B. Bowman for Thursday, October 8, 2009 at 8:45 a.m. at the Broward County Circuit Court, 201 S.E. 6th Street, Room 910A, Fort Lauderdale, FL 33301 on the following motion:  **Motion to Substitute Party and Motion for Stay Pursuant to 12 USC § 1821 (d) (12) (A) (ii).**

                    Respectfully submitted,

                    **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
                    *Attorneys for Federal Deposit Insurance Corporation, as Receiver Defendant, CORUS BANK, N.A.*
                    200 South Biscayne Boulevard, Suite 2500
                    Miami, Florida 33131-5340
                    Tel: 305-350-2359
                    Fax: 305-351-2201

                    By: _____
                       David W. Trench
                       Florida Bar No. 202975

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been delivered by facsimile and U.S. Mail on this 7th day of October, 2009 to: Jonathan Kline, Esq., Jonathan Kline, P.A., 2761 Executive Park Drive, Weston, FL 33331; Lynette Ebeoglu McGuinness, Esq., Murai Wald Biodo & Moreno, 1200 Ponce De Leon Blvd., Coral Gables, FL 33134; and Stephen B. Gillman, Esq., Shutts & Bowen, LLP, 200 East Broward Boulevard, National City Center, Suite 2100, Fort Lauderdale, FL 33301.

_____
David W. Trench

*1*

MIAMI 1962149.1 7614532194

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 SOUTH BISCAYNE BOULEVARD, SUITE 2500 · MIAMI, FLORIDA 33131-5340

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

**I(a) PLAINTIFF**

JEROME SHAFFER AND
SHARON SHAFFER,

**DEFENDANTS** 09 - 62027

SB HOTEL ASSOCIATES, LLC; BAYROCK GROUP, LLC; DONALD J.
TRUMP: ROY STILLMAN; and FEDERAL DEPOSIT INSURANCE
COMPANY, as Receiver for Corus Bank, N.A.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
    (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

CIV - SEITZ

MAGISTRATE JUDGE
O'SULLIVAN

09 CV 62027 Seitz/D'Sullivan

Jonathan Kline, Esq.
Jonathan Kline, P.A.
2761 Executive Park Drive
Weston, FL 33331

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Christopher S. Carver, Esq.
Akerman Senterfitt
One S.E. Third Ave., 25th FL
Miami, FL 33131
Telephone: 305-374-5600

FILED by RAL
INTAKE

DEC 2 8 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**  BROWARD

## II. BASIS OF JURISDICTION

(PLACE AN X ONE BOX ONLY)

1.  U.S. Government
    Plaintiff

2.  U.S. Government
    Defendant

X  3.  Federal Question
    (U.S. Government Not a Party)

4.  Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES

(PLACE AN X IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)

(For Diversity Case Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated and Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CAUSE OF ACTION

Breach of Contract

**IVa.  Five (5) days estimated (for both sides) to try entire case**

## V. NATURE OF SUIT      (PLACE AN X IN ONE BOX ONLY)

| A  CONTRACT | A  TORTS | B  FORFEITURE/PENALTY | A  BANKRUPTCY | A  OTHER STATUS |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 States Reappointment |
| 120 Marine | | 620 Other Food & Drug | 423 withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 310 Airplane | 625 Drug Related Seizure of | | 430 Banks and Banking |
| 140 Negotiable Instrument | 315 Airplane Product Liability | Property 21 USC | A  PROPERTY RIGHTS | 450 Commerce/ICC Rates/etc. B |
| 150 Recovery of Overpayment & | 320 Assault, Libel & Slander | 881 | | 460 Deportation |
| Enforcement of | 330 Federal Employers' | 630 Liquor Laws | 820 Copyrights | 470 Racketeer Influenced and |
| Judgment | Liability | 640 R.R. & Truck | 830 Patent | Corrupt Organizations |
| 151 Medicare Act | 340 Marine | 650 Airline Regs | 840 Trademark | 810 Selective Service |
| 152 Recovery of Defaulted | 345 Marine Product Liability | 660 Occupational Safety/Health | | 850 Securities/Commodities/ |
| Student Loans (Excl | 350 Motor Vehicle | 690 Other | B  SOCIAL SECURITY | Exchange |
| Veterans) B | 355 Motor Vehicle Product | | | 875 Customer Challenge 12 USC |
| 153 Recovery of Overpayment of | Liability | | 861 HIA (1395f) | 3410 |
| Veteran's Benefits B | 360 Other Personal Injury | A  LABOR | 862 Black Lung (923) | 891 Agricultural Acts |
| 160 Stockholders' Suits | | | 863 DIWC/DIWW (405(g)) | 892 Economic Stabilization Act |
| X 190 Other Contract | | 710 Fair Labor Standards Act | 864 SSID Title XVI | 893 Environmental Matters |
| 195 Contract Product Liability | | 720 Labor Management | RSI (405(g)) | 894 Energy Allocation Act |
| | | Relations B | | 895 Freedom of Information Act |
| | | 730 Labor Management | | 900 Appeal of Fee Determination |
| A  REAL PROPERTY | A  CIVIL RIGHTS | Reporting & | A  FEDERAL TAX SUITS | Under Equal Access |
| | | Disclosure Act | | to Justice |
| 210 Land Condemnation | 441 Voting | B  PRISONER PETITIONS | 870 Taxes (U.S. Plaintiff or | 950 Constitutionality of State |
| 220 Foreclosure | 442 Employment | Motions to Vacate Sentence | Defendant) | Statutes |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | Habeas Corpus | 871 IRS-Third Party 26 USC 7609 | 890 Other Statutory Actions* |
| 240 Torts to Land | 444 Welfare | 530 General | | * A or B |
| 245 Tort Product Liability | 440 Other Civil Rights | 535 Death Penalty | | |
| 290 All Other Real Property | | 540 Mandamus and Other* | | |
| | | 550 Civil Rights | | |
| | | * A or B | | |

PERSONAL INJURY

362 Personal Injury-Med
    Malpractice
365 Personal Injury-Product
    Liability
368 Asbestos Personnel
    Injury

PERSONAL PROPERTY

370 Other Fraud
371 Truth in Lending B
380 Other Personal Property
    Damage
385 Property Damage
    Product Liability

710 Fair Labor Standards Act
720 Labor Management
    Relations B

Railway Labor Act
790 Other Labor Litigation
791 Employee Ret. Inc. Security
    Act B

6. Multidistrict Litigation

## VI. ORIGIN

X Removed from State Court      (PLACE AN X IN ONE BOX ONLY)

Remanded from Appellate Court      Refiled

Transferred from another district (specify)

6. Multidistrict Litigation

Appeal to District Judge from
Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A
UNDER F.R.C.P. 23

CLASS ACTION    DEMAND $

Check YES only if demanded in complaint

JURY DEMAND:    X yes    NO

## VIII. RELATED CASE(S) IF ANY

(See Instructions)

Trilogy Properties LLC v. SB Hotel Associates
LLC, Case No. 09-21406-CIV-
JORDAN/MCALILEY (U.S. Dist. Ct., S.D. Fla.)

JUDGE

DATE  December 28, 2009

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

FOR OFFICE USE ONLY: Receipt No. 1014300    M/ifp:    Amount: 350.